Joan SOLIE and Ann Baxter,
Plaintiffs-Respondents,

v.

EMPLOYEE TRUST FUNDS BOARD and
The Department of Employee Trust Funds,
Defendants-Appellants.

Supreme Court

*No. 2003AP1850. Oral argument October 5, 2004.—Decided
April 19, 2005.*

2005 WI 42

(Also reported in 695 N.W.2d 463.)

616

For the defendants-appellants the cause was argued by *L. Jane Hamblen*, assistant attorney general, with whom on the briefs (in the court of appeals) was *Peggy A. Lautenschlager*, attorney general.

For the plaintiffs-respondents there was a brief (in the court of appeals) by *Joanne L. Huston* and *Wisconsin Education Association Council*, Madison, and oral argument by *Joanne L. Huston*.

¶ 1. LOUIS B. BUTLER, JR., J. The Employee Trust Funds Board (Board) appeals from the circuit court's order that reversed the Board's order and reinstated Joan Solie's and Ann Baxter's years of creditable service earned while in the combined group plan. The court of appeals certified the appeal to us to determine whether our decision in *Schmidt v. Wisconsin Employe Trust Funds Board*, 153 Wis. 2d 35, 449 N.W.2d 268 (1990), should be construed to provide continued State Teacher's Retirement System (STRS) combined group membership to teachers who withdrew their deposits in the retirement deposit fund and then returned to teaching after creation of the formula group.

¶ 2. We answer the question in the affirmative. We conclude that Solie and Baxter retained their STRS membership rights when they returned to teaching after they departed from teaching service and took separation benefits prior to the formula group's cre-

ation. As such, Solie and Baxter were improperly placed in the formula group retirement plan without their having elected to do so. We further conclude, however, that Solie and Baxter are not entitled to costs and reasonable attorney fees pursuant to Wis. Stat. § 814.245 (2001–02). Therefore, we affirm in part and reverse in part the circuit court's order.

I

¶ 3. From the late 1950s to the 1980s, STRS experienced several alterations that culminated in its assimilation into the Wisconsin Retirement System (WRS). This case centers on a single change to STRS that occurred in 1965, the legislature's creation of the "formula group" retirement plan, and this court's decision in *Schmidt.* To better provide context, the following background discussion weaves the relevant alterations in STRS with the historical facts involved in Solie's and Baxter's cases.

¶ 4. Solie began teaching at a Wisconsin public school in 1957. She taught during the 1957–58 and 1958–59 school years. After teaching part of the 1959–60 school year, she left. She returned to teach for the 1963–64 school year and then left again on June 12, 1964. Baxter taught for both the 1962–63 and the 1963–64 school years. She left on June 12, 1964, but then returned to teach for .48 of a year during the 1964–65 school year. Baxter again left in June 1965.

¶ 5. Up until their departures, it is undisputed that both Solie and Baxter were members of the STRS "combined group" retirement plan.[1] The combined group was an annuity plan whereby a teacher's retire-

---

[1] The "separate group" existed prior to the combined group plan. The separate group is not at issue in this case.

ment benefit depended upon the amount of deposits and earnings in the teacher's retirement deposit account. *See* Wis. Stat. §§ 42.242–42.243 (1965).[2] Both the teacher and the state were required to make deposits into the account. *See* Wis. Stat. § 42.40(2) and Wis. Stat. § 42.45.

¶ 6. After a teacher left the system, the teacher could take a "separation benefit." Wis. Stat. § 42.242(5).[3] Generally, a separation benefit allowed the teacher to withdraw his or her accumulated deposits, with interest, in his or her STRS retirement deposit account, subject to certain conditions. *Id.* To obtain the separation benefit, § 42.242(5) required the teacher to sign a narrow waiver, which constituted a "full and complete discharge and release of all right, interest or claim . . . to state deposit accumulations."

¶ 7. Each time Solie and Baxter left teaching (Solie at the end of the 1959–60 and 1963–64 school years, and Baxter at the end of the 1963–64 and

---

[2] All references to the Wisconsin Statutes are to the 1965 version, unless otherwise noted.

[3] Wisconsin Stat. § 42.242(5) read:

> Any member who has ceased to be employed as a teacher in the public schools, state colleges or university in this state, and is not on leave of absence from a teaching position in the public schools, state colleges or university in this state, may be paid the accumulation from the member's deposits made while a member of the combined group based on teaching service performed after June 30, 1957, on filing with the board before the 50th birthday anniversary of such a member a written request therefore and a full and complete discharge and release of all right, interest or claim on the part of such member to state deposit accumulations based on teaching service performed after June 30, 1957. Withdrawal of accumulations from member's deposits made before said member became a member of the combined group shall be governed by s. 42.49.

1964–65 school years),[4] they signed a combined group wavier and took their separation benefits. As a result, they had no money remaining in STRS.[5]

¶ 8. Following Solie's and Baxter's departures, the legislature created another retirement annuity plan, the formula group, which became effective on September 11, 1965. *See* Wis. Stat. §§ 42.244 and 42.245. Under this group, a teacher's retirement benefit was calculated by a statutory formula that used, in addition to other factors, the teacher's "creditable service." *See* Wis. Stat. § 42.245(1)-(2). Creditable service included all years taught as a formula group member as well as certain amounts for years taught while under the combined group or the predecessor separate group. § 42.245(1).[6]

---

[4] Specifically, Solie's first separation benefit application was signed and dated April 12, 1960. Her second separation benefit application was signed and dated June 26, 1964.

Baxter's first separation benefit was signed and dated "Sept. 14," and file stamped received on September 23, 1964. Her second separation benefit application was signed and dated October 31, 1965. Baxter R. 194.

[5] The Board argues that Solie and Baxter are similarly situated in that prior to September 11, 1965, they both left teaching, took separation benefits, and signed a combined group waiver of rights. Solie and Baxter do not contest this assertion, so we treat them as being similarly situated. We do note, however, that Baxter did not apply for her second separation benefit until October 31, 1965. Baxter R. 194. As such, it appears that Baxter still had deposits in the retirement deposit fund on September 11, 1965.

[6] Wisconsin Stat. § 42.245(1), provided as follows:

(a) Creditable service shall be expressed in years and such fractions thereof as the board determines. The creditable service of each member any time prior to July 1, 1966, shall be the number

¶ 9. Like the combined group, a formula group member could withdraw any deposits made into the STRS retirement deposit fund. *See* Wis. Stat. § 42.245(4).[7] Unlike the combined group, however, a

of years of service as a teacher in Wisconsin teaching (including prior service) theretofore creditable to him pursuant to the applicable statutes and rules, provided that military service meeting the requirements of s. 42.45(2) or (3) shall be included for any such period for which the member makes deposits as provided by s. 42.45(4). The creditable service of a member with respect to teaching after June 30, 1966, shall be the number of years of subsequent service as a teacher in Wisconsin teaching until such service as a teacher is terminated, but not including any period subsequent to the June 30 following or coincident with his 70th birthday. The board shall fix and determine by proper rules and regulations how much teaching in any years is equivalent to one year of creditable service. Military service after June 30, 1966, shall be creditable on the same basis as military service prior thereto.

(b) A member shall be considered a new member with respect to each separate period of service as a teacher in Wisconsin teaching as determined pursuant to s. 42.20(17)(a) which begins after June 30, 1966. The commencement of a separate period of teaching service shall not cause the loss of any benefit to which a member is entitled by virtue of any preceding service.

(c) Creditable service for Wisconsin teaching prior to September 11, 1965 shall be reduced by one-half of any period included therein with respect to which the required deposits of a member have been withdrawn, unless repayment of any such withdrawal has been made prior to July 1, 1966, pursuant to any applicable law. Nothing in this paragraph shall be construed to reinstate any rights waived in connection with the payment of a withdrawal or separation benefit.

[7] Wisconsin Stat. § 42.245(4) provided as follows:

Any formula group member who has ceased to be employed as a teacher in Wisconsin teaching and who is not on authorized leave of absence from a teaching position in Wisconsin teaching, shall be paid the accumulation from the member's required and additional deposits upon filing with the board, before the 50th birthday of the

formula group member was required to sign a much broader waiver, which provided "a full and complete discharge and release of all right, interest or claim on the part of the member to state deposit accumulations and to any benefit arising under any provisions of ss. 42.20 to 42.54." *Id.*

¶ 10. Participation in the formula group began on July 1, 1966, *see* Wis. Stat. § 42.244(3), but not all teachers were automatically enrolled in the new plan. Wisconsin Stat. § 42.244(1)(a)-(d) governed which teachers could elect to participate and which were required to join the formula group.[8] Subsections (1)(a)-(c)

---

member, a written request therefore and a full and complete discharge and release of all right, interest or claim on the part of the member to state deposit accumulations and to any benefit arising under any provision of ss. 42.20 to 42.54.

[8] Wisconsin Stat. § 42.244(1)(a)-(d) provided as follows:

There is created as of September 11, 1965, as a part of the system a formula group, to be composed of: (a) Any combined group or separate group member, except any member who on September 11, 1965, is a member receiving an annuity or a member whose annuity is being withheld pursuant to s. 42.242(6) or 42.49(13), who at any time on and after September 11, 1965, but prior to December 1, 1965, is employed as a teacher in Wisconsin teaching and makes a required deposit pursuant to s. 42.40, and who elects in accordance with this section to become a member of the formula group; (b) any combined group or separate group member who on September 11, 1965, is on authorized leave of absence, and who elects in accordance with this section to become a member of the formula group, but no such election shall be effective unless and until such member resumes employment as a teacher in Wisconsin teaching concurrently with the termination of such leave of absence; (c) any member who is a member of the system on September 11, 1965, but who is not eligible for an election under (a) or (b) herein, who within 90 days from the last day of the month in which he is first employed as a teacher in Wisconsin teaching after September 11, 1965, elects in accordance with this section to become a member of the formula group, but his

allowed STRS "members" to elect to join.[9] Subsection (1)(a) applied to combined and separate group members, subject to limitations, who were teaching and making required deposits. Subsection (1)(b) concerned any combined and separate group member who was on authorized leave. And subsection (1)(c) was the catch-all provision that pertained to all STRS members who did not fall under subsections (1)(a) or (1)(b), subject to certain provisions. The last provision, subsection (1)(d), applied to all non-STRS members. It did not contain an election provision but rather required "any person who becomes a member of the system after November 30, 1965," to be joined in the formula group. § 42.244(1)(d).

¶ 11. Solie and Baxter returned to teaching following the formula group's creation; Solie came back for the 1967–68 and 1968–69 school years, while Baxter

---

participation as a member of the formula group shall not include or relate to any benefit, compensation or employment for any period prior to September 11, 1965; and (d) any person who becomes a member of the system after November 30, 1965. For purposes of s. 66.99 each member of the formula group shall also be classified as a member of the combined group or of the separate group, as determined pursuant to s. 42.241; such classification shall also be applicable with respect to any benefit, compensation or employment which is not includable for formula group purposes.

[9] The members' right of election was a "one-time option to make a change in retirement plans." *Schmidt v. Wis. Employe Trust Funds Bd.*, 153 Wis. 2d 35, 48, 449 N.W.2d 268 (1990). To enable the members to make an informed election, the legislature required these members to be provided with "comparative information concerning the required deposits, benefits and other features applicable to members of the formula group and to members of the group to which such member then belongs." Wis. Stat. § 42.244(2).

taught for the 1966–67[10] school year and for 11 days during the 1969–70 school year. Each time they returned, the Department of Employee Trust Funds (Department) automatically enrolled them in the formula group, pursuant to Wis. Stat. § 42.244(1)(d), because it concluded they were not "members" of STRS. Wisconsin Stat. § 42.20(6r)(a) defined "member" as "a person who, as the result of having been engaged in Wisconsin teaching, has a credit in the retirement deposit fund or a reserve in the annuity reserve fund, or who is or may be entitled to a present or future benefit under the teachers' insurance and retirement law as provided by s. 42.51."[11] The Department equated "credit in the retirement deposit fund or a reserve in the annuity reserve fund" with having money in either of the funds. Because Solie and Baxter previously withdrew all money when they took their separation benefits, the Department concluded they did not have any "credit" in the system. Thus, the Department no longer deemed them STRS members. Therefore, the Department reasoned that Solie and Baxter did not fall under the member election provisions in § 42.244(1)(a)-(c), but rather under the automatic enrollment provision in § 42.244(1)(d).

---

[10] Baxter also took a separation benefit after the 1966–67 school year, with the application signed and dated June 21, 1967. Although Baxter was placed in the formula group, this separation benefit application was a combined group member application.

[11] It is agreed that Solie and Baxter do not fall under the second half of this definition that refers to the teachers' insurance and retirement fund under Wis. Stat. § 42.51. That retirement system related to retirement benefits under the plan that predated STRS.

626

¶ 12. In 1971, following their last withdrawal from teaching, Solie and Baxter took separation benefits.[12] As before, they signed waivers of rights. But because they were in the formula group, they signed the broader waiver that resulted in "a full and complete discharge and release of all right, interest or claim" in any STRS benefits.[13] *See* Wis. Stat. § 42.245(4).

¶ 13. Solie again returned for the 1973–74 school year and Baxter returned the following school year. The Department again placed them in the formula group; this time not because the Department concluded they were not members of STRS, but because the legislature mandated that all previous groups be joined into the formula group. *See* Wis. Stat. § 42.244(4)(a) (1973).[14] Solie and Baxter continued to teach each year from then on.

¶ 14. STRS was merged into the current retirement system, WRS, in 1982. *See* Wis. Stat. §§ 40.20–.22 (1981–82). Solie retired from Wisconsin teaching on June 27, 1993, as did Baxter on June 6, 1998.

¶ 15. To determine Solie's and Baxter's retirement benefit, WRS, like the STRS formula group,

---

[12] According to the Board's findings of fact, Baxter also took a separation benefit in 1967. Although she was a member of the formula group during that time, she signed a combined group waiver. This mistake is not material, though, because Baxter later signed the broader formula group waiver in 1971.

[13] The record does not reveal whether Solie and Baxter read the waiver, much less understood it.

[14] Wisconsin Stat. § 42.244(4)(a) (1973) read in relevant part:

Beginning on May 11, 1973 the formula group shall include every member who on or after such date is employed as a teacher in Wisconsin teaching and who makes a required deposit pursuant to s. 42.40.

utilizes creditable service as a factor. *See* Wis. Stat. § 40.02(17) (2003–04).[15] After Solie and Baxter retired, the Department determined that they were only entitled to creditable service dating back to when they returned to teaching in 1973 and 1974, respectively, since they signed a formula group waiver when they took their separation benefits in 1971. The Department noted that their 1971 formula group waiver surrendered "all right, interest or claim on the part of the member to state deposit accumulations and to any benefit arising under any provisions of ss. 42.20 to 42.54." *See* Wis. Stat. § 42.245(4). According to the Department, the waiver meant that Solie's and Baxter's creditable service prior to 1971 was extinguished. This resulted in an otherwise reduced WRS retirement benefit.

¶ 16. Solie and Baxter appealed the Department's denial of creditable service earned before 1971 to the Board. They contended that the Department acted erroneously when it automatically placed them into the formula group upon their return to teaching in 1966 and 1967. Although Solie and Baxter returned to teaching after the formula group was created in 1965, they argued that they were still STRS members when they returned because, pursuant to *Schmidt,* they retained their creditable service. Thus, they argued that they could have been joined in the formula group only if they had elected to do so. *See* Wis. Stat. § 42.244(1)(c). Given that they did not make that election, they asserted that

---

[15] Wisconsin Stat. § 40.02(17) (2003–04) reads as is pertinent here:

> [T]he amount of creditable service for periods prior to January 1, 1982, shall be the amount for which the participant was eligible under the applicable laws and rules in effect prior to January 1, 1982.

they should have remained in the combined group, which, in turn, meant that they should have only signed the combined group waiver when they left teaching in 1971. And because the combined group waiver relinquished only their right to the state's deposits in the system, and not their creditable service, Solie and Baxter claimed they were entitled to all of their creditable service, not just that earned from 1973. The Board disagreed.

¶ 17. In concluding that Solie and Baxter were no longer STRS members, the Board, like the Department, associated "credit" with deposits of money. Solie's and Baxter's creditable service did not suffice. Since they chose to withdraw all their money from their retirement accounts when they left teaching prior to the formula group's creation, the Board concluded that they no longer were STRS members. As such, the Board determined that the Department properly enrolled Solie and Baxter into the formula group pursuant to the automatic enrollment provision in Wis. Stat. § 42.244(1)(d). Having been members of the formula group, the Board agreed with the Department that Solie and Baxter were not entitled to creditable service for their years of teaching prior to 1971 because of the formula group waivers they signed upon taking their separation benefits in 1971.

¶ 18. Solie and Baxter sought certiorari review in the circuit court for Dane County pursuant to Wis. Stat. § 40.08(12) (2001–02).[16] Reviewing the Board's deter-

---

[16] Wisconsin Stat. § 40.08(12) (2001–02) states:

Notwithstanding s. 227.52, any action, decision or determination of the board, the Wisconsin retirement board, the teachers retirement board, the group insurance board, or the deferred compensation board in an administrative proceeding shall be

mination de novo, the circuit court, Honorable Paul B. Higginbotham, reversed. The circuit court concluded that Solie and Baxter were indeed STRS members when they each returned to teaching. The circuit court agreed with Solie and Baxter that they remained combined group members when they returned because under *Schmidt* they retained their right to creditable service credits. The court reasoned that this satisfied the requirement in the definition of "member" that a teacher have a "credit in the retirement deposit fund."

¶ 19.　The circuit court rejected the Board's contention that "credit" referred to a deposit of money for two reasons. First, the court observed that the plain meaning of credit included much more than just deposits. Second, the court observed that the legislature used both "credit" and "deposit" in varying places. Applying the statutory interpretation presumption that the legislature uses different words to connote separate meanings, the court concluded that a credit need not be a deposit of money.

¶ 20.　Given the circuit court's conclusion that Solie and Baxter were STRS combined group members, the court noted they had the statutory right to elect to become formula group members. Since they did not make that election, the circuit court concluded they continued to be combined group members. As a consequence, they should have only signed a combined group waiver when they took their separation benefits in 1971, which would have waived their entitlement only to the state's deposits in their accounts. The court

reviewable only by an action for certiorari in the circuit court for Dane County that is commenced by any party to the administrative proceeding, including the department, within 30 days after the date on which notice of the action, decision or determination is mailed to that party, and any party to the certiorari proceedings may appeal the decision of that court.

concluded that the Department owed Solie and Baxter the entirety of their creditable service.

¶ 21. Without explanation, the circuit court also awarded Solie and Baxter costs and reasonable attorney fees pursuant to Wis. Stat. § 814.245 (2001–02).

¶ 22. The Board appealed, and the court of appeals certified the case to this court. We accepted the certification to determine whether *Schmidt* should be construed to provide continued membership in the combined group to teachers who withdrew their deposits in STRS and then returned to teaching after creation of the formula group.

## II

¶ 23. On certiorari review, we review the decision of the agency, not the circuit court. *See Beecher v. LIRC,* 2004 WI 88, ¶ 22, 273 Wis. 2d 136, 682 N.W.2d 29. Our review is limited to (1) whether the Board kept within its jurisdiction; (2) whether the Board acted according to law; (3) whether the Board acted arbitrarily, oppressively, or unreasonably; and (4) whether the evidence permitted the Board to reasonably make the order or determination in question. *See State ex rel. Tate v. Schwarz,* 2002 WI 127, ¶ 15, 257 Wis. 2d 40, 654 N.W.2d 438.

¶ 24. The fundamental question in this case is whether Solie and Baxter were STRS "members" as that term is used in Wis. Stat. § 42.20(6r)(a) when they returned to teaching following the formula group's creation. This presents a question of law. *See Petrowsky v. Krause,* 223 Wis. 2d 32, 35–36, 588 N.W.2d 318 (Ct. App. 1998).

¶ 25. We employ any of three levels of deference to an agency's conclusion of law: great weight deference, due weight deference, or no deference. We will grant an agency's interpretation of a statute great weight deference when:

> (1) the agency is charged with administration of the particular statute at issue; (2) its interpretation is one of long standing; (3) it employed its expertise or specialized knowledge in arriving at its interpretation; and (4) its interpretation will provide uniformity and consistency in the application of the statute.

*Beecher,* 273 Wis. 2d 136, ¶ 23. Due weight deference is appropriate when an "agency has some experience in the area but has not developed the expertise that necessarily places it in a better position than a court to interpret and apply a statute." *Id.* (citation omitted). No deference is owed to an agency interpretation "where the issue is one of first impression, where the agency has no special expertise, or where the agency's position has been so inconsistent that it provides no real guidance." *Id.* (citation omitted).

██

¶ 26. The Board is charged with administering WRS. *See* Wis. Stat. § 40.03(1) (2001–02). In concluding that Solie and Baxter were not STRS members when the Department automatically enrolled them into the formula group, the Board not only interpreted § 42.20(6r)(a), it also examined and rejected the import of this court's decision in *Schmidt.* The Board asserts that its interpretation of the statutes at issue should be given great weight deference because its interpretation is long-standing and provides uniform and consistent application of the statutes. However, no decisions are

set forth or are available to this court to support the Board's interpretation in the present case. *See* Wis. Admin. Code § ETF 11.13(2) (Jan., 2004). Because the issue in this case amounts to whether *Schmidt* should be construed or extended to provide teachers with continued membership in the combined group, "we need not defer to agency interpretations of our own decisions" because this court "retains the power to explain, modify, or overrule its own precedents." *See Beecher,* 273 Wis. 2d 136, ¶ 26.

### III

¶ 27. The heart of this case is the meaning of "member." As noted above and as relevant here, "member" is defined as "a person who, as the result of having been engaged in Wisconsin teaching, has a credit in the retirement deposit fund or a reserve in the annuity reserve fund." Wis. Stat. § 42.20(6r)(a). Following the formula group's creation, if Solie and Baxter were still STRS members when they returned to teaching for the 1967–68 and the 1966–67 teaching years, respectively, then they should have been given the right to elect to join the formula group pursuant to Wis. Stat. § 42.244(1)(a)-(d). If they were not STRS members when they returned, then they were properly placed in the formula group automatically.

### A

¶ 28. The Board argues that Solie and Baxter were appropriately automatically enrolled in the formula group because they were not members of STRS upon their return. Focusing on the term "credit," the Board concedes that credit, when viewed in isolation,

"can include an acknowledgment or recognition of both monetary and non-monetary things." Creditable service, they agree, is an example of a "non-monetary" credit. Viewing "credit" in context, however, the Board contends that creditable service is insufficient to sustain membership because the credit must be "in the retirement deposit fund or a reserve in the annuity reserve fund." *See* Wis. Stat. § 42.20(6r)(a). The Board submits that the retirement deposit fund contained only money, given that Wis. Stat. § 42.33(1)(a) and (b) provides:

> The state teachers retirement board shall at all times maintain assets:
>
> (a) In the "Annuity Reserve Fund" at least equal to the net present value of the prospective benefit payments according to the basic assumptions for the rates on which benefits have been granted;
>
> (b) In the "Retirement Deposit Fund" equal to the liabilities for member deposits and for state deposits for members of the separate group and the combined group and interest accretions.

Creditable service credit, the Board argues, simply does not fit the requirement to maintain assets in these funds.

¶ 29. The Board also observes that other statutes within chapter 42 indicated that the retirement deposit fund was comprised of deposits and earnings. *See* Wis. Stat. § 42.243(5)(c) ("Earnings will be credited to the individual accounts in the retirement deposit fund . . ."); § 42.243(6)(c) ("Capital gains and losses will be credited to the individual accounts in the retirement deposit fund . . ."); Wis. Stat. § 42.45(1)(d) ("All state

deposits shall be credited as of June 30 . . ."). Again, the Board contends that creditable service credit is not something that fits here.

¶ 30. In response to the court of appeals' certified question regarding *Schmidt,* the Board reads *Schmidt* as providing no guidance on what constitutes membership or how a person became a formula group member. The Board notes that *Schmidt* involved a teacher who elected to become part of the formula group. *Schmidt,* 153 Wis. 2d at 39. But more to the point, the Board notes that nothing in *Schmidt* indicated that a teacher's creditable service was credited to the retirement deposit fund, as the definition of member requires. The Board maintains that all *Schmidt* held was that, notwithstanding a combined group waiver, a teacher's "years of service remained on his [or her] record" which subsequently could be used to receive creditable service if and when he or she became a formula group member. *See Id.* at 46. Therefore, the Board reasons, *Schmidt* does not undermine its statutory analysis regarding membership.

¶ 31. Solie and Baxter, on the other hand, claim that they were incorrectly automatically enrolled in the formula groups because they were still STRS members, combined group members in particular. They contend the Board has given the definition of member an overly narrow interpretation, noting Wis. Stat. § 42.20(6r)(b)'s definitions for active and inactive members.[17]

---

[17] We note that even the definitions for active and inactive member include the term "member." *See* Wis. Stat. § 42.20(6r)(b)1 (defining "active member" as "a member who is not receiving an annuity . . . and who has made a required deposit in the retirement deposit fund based on earnings after June 30, 1956, or is deemed an active member under s.

¶ 32. Solie and Baxter predominantly rely on this court's decision in *Schmidt,* going so far as to say that *Schmidt* clearly controls this case. They claim that because *Schmidt* determined that combined group members who signed a separation benefit waived any interest in money only, "[l]ogic dictates that one has to remain a member of a system in which one has a credit and retains rights." Thus, by signing the combined group waiver, they argue, they did not divest themselves of membership in STRS.

¶ 33. Although the Board advances a plausible basis for automatically placing Solie and Baxter in the formula group, the argument does underestimate this court's decision in *Schmidt.* In *Schmidt,* this court considered the interplay between the combined group —which did not contain the concept of "creditable service"—and the formula group. At issue was "the rights retained" under STRS after a combined group member withdrew his deposits and signed a combined group waiver. *Schmidt,* 153 Wis. 2d at 37. In that case, Schmidt taught from 1957 until 1963, at which time he withdrew his member deposits and signed a combined group waiver. *Id.* at 37–38. He returned to teaching the following year, and the formula group was created the year after that, in 1965. *Id.* Schmidt elected to join it. *Id.*

---

42.241(7), or is on a leave of absence from a Wisconsin teaching position."); § 42.20(6r)(b)2 (defining "inactive member" as "a member who is not receiving an annuity . . . , who has not made a required deposit in the retirement deposit fund based on earnings after June 30, 1956, and is not on leave of absence from a Wisconsin teaching position."). Thus, Solie's and Baxter's reliance on these definitions to broaden the definition of member is circular and we therefore do not address this argument further.

¶ 34. Several years later, the Department completed an audit of the system that determined what years of creditable service teachers were owed. *Id.* at 39. Schmidt objected to his tally as being six years too short. The Department denied Schmidt any creditable service for his years of teaching prior to 1963 because of the combined group waiver he signed. *Id.*

¶ 35. This court framed the question before it as asking what were the "rights retained" under STRS when a teacher signs a combined group waiver only to later return to the system. *Id.* at 38. This court examined how a teacher's combined group waiver impacted that teacher's creditable service after returning to the system as a formula group member. This court observed that the combined group waiver provided "a full and complete discharge and release of all right, interest or claim on the part of such member to state deposit accumulations . . . ." *Id.* at 44. Contrary to the Board's reading, in view of the waiver's language, this court in *Schmidt* did more than simply say that a teacher who signed this waiver retained years of creditable service on his or her record. *See id.* at 46. *Schmidt* determined that a teacher who stopped teaching and signed a combined group waiver "only waived his [or her] right to money which accumulated in his [or her] retirement fund through state deposits, nothing else." *Id.* at 46. The court reasoned that the Board erred in equating the plain meaning of "state deposit accumulations" with the terms "years of teaching service" and "creditable service." *Id.* at 45. In other words, this court recognized that there were other rights that were not affected by a separation benefit and combined group waiver. We agree with Solie and Baxter that when they returned to teaching service, their STRS combined group membership constituted one of these rights.

637

¶ 36. Our interpretation of *Schmidt* does not conflict with the statutory definition of member. Again, to be a member requires a teacher to have a "credit" in the retirement deposit fund or in the retirement annuity fund. Although the Board highlights several statutes that indicate what types of credit go into the fund—*see, e.g.,* Wis. Stat. § 42.33(1)(a) and (b) (assets equal to liabilities),[18] § 42.243(5)(c) (earnings), § 42.243(6)(c) (capital gains and losses), § 42.45(1)(d) (state deposits)—we disagree that this list is exhaustive, particularly given that the legislature specifically granted teachers credit for their creditable service. Without any mention in the statutes regarding where a teacher's creditable service remains, we conclude that it is reasonable to construe the retirement deposit fund as encompassing more than simply a lockbox for money. Accordingly, because Solie's and Baxter's creditable service constituted a credit in the retirement deposit fund sufficient to sustain STRS membership, our reading of *Schmidt* is not at odds with the statutory definition of member.

B

¶ 37. As STRS combined group members, Solie and Baxter could not have been automatically enrolled in the formula group. The only teachers who were automatically enrolled in the formula group were persons who became members of STRS after November 30, 1965. Wis. Stat. § 42.244(1)(d). Teachers who were STRS members before November 30, 1965, could only

---

[18] We note that these sections do not define membership, but deal with the responsibilities of the Board.

have joined the formula group if they elected to do so. § 42.244(1)(a)-(c). Subsection (1)(a) applied to combined and separate group members, subject to limitations, who were teaching and making required deposits. Subsection (1)(b) concerned any combined and separate group member who was on authorized leave. And subsection (1)(c) was the catchall provision that pertained to all STRS members who did not fall under subsections (1)(a) or (1)(b), subject to certain provisions.

¶ 38. In Solie's and Baxter's case, they could not have been automatically enrolled in the formula group under Wis. Stat. § 42.244(1)(d) because we have already determined that they were STRS combined group members prior to November 30, 1965. Their right of election was provided in the catchall provision in subsection (1)(c), as they were neither teaching and making required deposits nor on an authorized leave of absence. Because they did not elect to join the formula group, they were improperly placed in it. They should have remained combined group members, which means that when they took separation benefits in 1971 they should have signed only the combined group waiver. And because the combined group waiver forfeited only their interest in state deposits, they retained their years of creditable service. *See Schmidt,* 153 Wis. 2d at 46. Those years are now due consistent with this court's decision in *Schmidt.*

IV

¶ 39. The State also argues the circuit court erred by awarding Solie and Baxter costs and reasonable attorney fees pursuant to Wis. Stat. § 814.245 (2001–02). Section 814.245 states:

Except as provided in s. 814.25, if an individual, a small nonprofit corporation or a small business is the prevailing party in any action by a state agency or in any proceeding for judicial review under s. 227.485(6) and submits a motion for costs under this section, the court shall award costs to the prevailing party, unless the court finds that the state agency was substantially justified in taking its position or that special circum-·stances exist that would make the award unjust.

¶ 40. The State points out that this proceeding was not an action brought by a state agency, as the Board did not initiate review, nor was it a proceeding for judicial review under Wis. Stat. § 227.485(6) (2001–02), as Board determinations are not reviewed by Wis. Stat. ch. 227 (2001–02), but rather are governed solely by certiorari review under Wis. Stat. § 40.08(12) (2001–02). In addition, the Board argues, the necessary information was not presented to the circuit court. According to the Board, § 814.245(8) (2001–02) provides that "[a]n individual is not eligible to recover costs under this section if the person's properly reported federal adjusted gross income was $150,000 or more in each of the 3 calendar years or corresponding fiscal years immediately prior to the commencement of the action."[19] There is no indication in the record that Solie and Baxter provided the circuit court with this information.

¶ 41. The circuit court failed to state reasons as to why it was awarding statutory costs and reasonable attorney fees in its written decision and order, other than to cite "Wis. Stat. § 815.245" (2001–02). Solie and Baxter have not responded to the State's argument that

---

[19] Wisconsin Stat. § 814.245(8) (2001–02) goes on to state, "This subsection applies whether the person files the tax return individually or in combination with a spouse."

the trial court erred by awarding costs under this statute. We will not develop their argument for them. *See State v. Gulrud,* 140 Wis. 2d 721, 730, 412 N.W.2d 139 (Ct. App. 1987). Therefore, we reverse the trial court's order awarding costs without addressing this argument further.

## V

¶ 42. In sum, we construe *Schmidt* to provide continued STRS membership to teachers who were members of the combined group, withdrew their deposits in STRS, and then returned to teaching after creation of the formula group. As STRS members, Solie and Baxter could have been placed in the formula group only if they had elected to do so. Because they did not, they remained in the combined group and consequently should have signed a combined group waiver only in 1971. Therefore, Solie and Baxter are entitled to all of their creditable service consistent with this court's decision in *Schmidt.* They are not, however, entitled to costs and attorney fees under Wis. Stat. § 814.245 (2001–02).

*By the Court.*—The order of the circuit court is affirmed in part and reversed in part, and remanded for proceedings consistent with this opinion.

¶ 43. JON P. WILCOX, J. (*dissenting*). I respectfully dissent from the majority opinion. The dispositive issue in this case is whether the plaintiffs possessed "a credit" in the "retirement deposit fund" after they left teaching prior to the creation of the formula group, took separation benefits, and withdrew all of the money from their state retirement deposit fund accounts, such that they continued to be "members" of the State

Teachers Retirement System (STRS) when the formula group was created in 1965. While the majority correctly sets forth the material facts and the history of the various teacher retirement programs, its analysis is nonetheless flawed. Specifically, I disagree with the majority's interpretation of our decision in *Schmidt v. Wisconsin Employe Trust Funds Board,* 153 Wis. 2d 35, 449 N.W.2d 268 (1990), and its definition of the words "fund" and "credit" in Wis. Stat. § 42.20(6r)(a) (1965).[1]

¶ 44. The facts relevant to this dispute are as follows: 1) Both plaintiffs were teachers and members of the combined group who took separation benefits prior to November 30, 1965; 2) Both teachers emptied their STRS accounts and signed combined group waivers upon departing from teaching; 3) Following the creation of the formula group in 1965, both teachers returned to teaching and were automatically enrolled in the STRS as formula group members; 4) Both teachers again took separation benefits in 1971, executing formula group waivers; and 5) Both teachers returned to teaching after 1973 as formula group members and thereafter retired. *See* majority op., ¶¶ 3–14.

¶ 45. The broad issue in this case is whether the teachers are entitled to "creditable service" under the Wisconsin Retirement System, Wis. Stat. § 40.02(17) (1981), for the time they taught prior to 1971. The answer to this question is dependent upon whether the teachers were correctly enrolled in the formula group plan upon their return to teaching after 1965.

¶ 46. If the plaintiffs were correctly enrolled as formula group members, then the waivers they signed in 1971 waived their right to any prior creditable

---

[1] All references to the Wisconsin Statutes are to the 1965 version unless otherwise indicated.

service[2] because formula group waivers constituted a "full and complete discharge and release of all right, interest or claim on the part of the member to state deposit accumulations *and to any benefit arising under any provision of ss. 42.20 to 42.54.*" Wis. Stat. § 42.245(4) (emphasis added). In contrast, if the plaintiffs were not correctly enrolled in the formula group, then they continued as part of the combined group and signed combined group waivers in 1971. Combined group waivers did not waive prior creditable service[3] because such waivers constituted merely "a full and complete discharge and release of all right, interest or claim on the part of such member to state deposit accumulations based on teaching service performed after June 30, 1957." Wis. Stat. § 42.242(5).

¶ 47. Whether the teachers were properly part of the formula group or combined group when they returned to teaching after 1965 is dependent upon the interaction of several statutes. Wisconsin Stat. § 42.244, governing the creation of the formula group, provided, in pertinent part:

(1) There is created as of September 11, 1965, as a part of the system a formula group, to be composed of:
. . . . (c) any member who is a member of the system on September 11, 1965, but who is not eligible for an election under (a) or (b) herein, who within 90 days from the last day of the month in which he is first employed as a teacher in Wisconsin teaching after

---

[2] *See Schmidt v. Wis. Employe Trust Funds Bd.*, 153 Wis. 2d 35, 45–46, 449 N.W.2d 268 (1990)(concluding that the separate group waiver, which contained language similar to the formula group waiver, resulted in loss of years of service).

[3] *See Schmidt,* 153 Wis. 2d at 46 (concluding that the language contained in the narrow combined group waiver did not waive a member's right to prior creditable service).

September 11, 1965, elects in accordance with this
section to become a member of the formula group . . . .
(d) any person who becomes a member of the system,
after November 30, 1965. . . .

As such, this case turns on whether the plaintiffs were
"members" of the retirement system on November 30,
1965. If the plaintiffs were members of the STRS prior
to their return, then they would have continued as
combined group members unless they elected to join the
formula group. In contrast, if the plaintiffs' member-
ships terminated after their departure, they became
members of the STRS when they returned to teaching
after November 30, 1965, and were correctly enrolled in
the formula group under § 42.244(1)(d).

¶ 48. Section 42.20(6r)(a) defined "member" as "a
person who, as the result of having been engaged in
Wisconsin teaching, has a credit in the retirement
deposit fund . . . ." Therefore, this case boils down to the
question of whether the plaintiffs possessed "a credit" in
the retirement deposit fund on November 30, 1965,
given that prior to that date, they left teaching, took
separation benefits, depleted their retirement deposit
fund accounts, and had not returned to teaching.

¶ 49. I would conclude that the plaintiffs ceased
to be "members" of the STRS when they left teaching
prior to November 30, 1965, took separation benefits,
and withdrew all of the money in their retirement
deposit fund accounts. The plaintiffs ceased to be "mem-
bers" of the STRS at that time because they did not
possess "a credit" in their retirement deposit fund
accounts, as they withdrew all the money in said
accounts.

¶ 50. Rather than focusing on the statutory defi-
nition of "member" and the meaning of "credit," the
majority, relying principally on this court's decision in

644

*Schmidt,* concludes that the plaintiffs were members of STRS because the combined group waivers they signed prior to November 30, 1965, did not terminate their STRS combined group membership "rights." Majority op., ¶¶ 33–36. This reasoning is flawed in several respects.

¶ 51. First, the plain language of § 42.20(6r)(a) defined "member" as "a person who, as the result of having been engaged in Wisconsin teaching, has *a credit* in the retirement deposit fund . . . ." (Emphasis added.) Thus, in order to be a "member" of the STRS, under the plain language of the statute, a teacher must have possessed "a credit" in the retirement deposit fund. The statute did not equate membership with retained "rights." "Words that are defined in the statute are given the definition that the legislature has provided." *Wis. Citizens Concerned for Cranes and Doves v. DNR,* 2004 WI 40, ¶ 6, 270 Wis. 2d 318, 677 N.W.2d 612 (citing *Beard v. Lee Enters.,* 225 Wis. 2d 1, 23, 591 N.W.2d 156 (1999)).[4] Therefore, even assuming that the majority is correct that the plaintiffs retained "rights" in the retirement system after signing combined group waivers, majority op., ¶ 35, that fact is not germane to the question of whether they continued to be "members" of the system, as membership is defined solely in relation to the existence of "a credit" in the retirement deposit fund.

¶ 52. Second, the majority opinion misconstrues our decision in *Schmidt.* In *Schmidt,* the plaintiff left teaching in 1963, executed a combined group waiver, and returned to teaching in 1964. *Schmidt,* 153 Wis. 2d

---

[4] *See also Bosco v. LIRC,* 2004 WI 77, ¶ 23, 272 Wis. 2d 586, 681 N.W.2d 157 (accord); *State ex rel. Kalal v. Cir. Ct. for Dane County,* 2004 WI 58, ¶ 44, 271 Wis. 2d 633, 681 N.W.2d 110 (accord).

at 38. When the formula group was created in 1965, Schmidt *elected* to become a member of the formula group. *Id.* at 39. Thus, in *Schmidt*, there was no question as to which benefit group the teacher properly belonged or which type of waiver he executed. The sole issue in *Schmidt* was whether the plaintiff's prior years of teaching while in the combined group constituted "creditable service" under the formula group, given that he had previously taken a separation benefit and signed a combined group waiver. *Id.* at 43–44. As such, the *Schmidt* decision involved the interpretation of the language utilized in the combined group waiver under § 42.242(5), which required a teacher to waive "all right, interest or claim on the part of such member to state deposit accumulations . . . ." *Id.* at 44–45.

¶ 53. Thus, the *Schmidt* decision concerned the effect of this language and whether a teacher retained any rights after signing such a waiver. Unlike the present case, there was no question that the plaintiff in *Schmidt* was properly a member of the formula group. Because the plaintiff in *Schmidt* voluntarily elected to join the formula group after its creation, it did not matter whether he was a "member" of the STRS when the formula group was created. *Schmidt* simply did not address the definition of "member" or what it meant to have "a credit" in the retirement deposit fund.

¶ 54. However, when analyzing the effect of the combined group waiver, *Schmidt* explicitly stated that "years of teaching service" and "creditable service" were not synonymous with "state deposit accumulations":

> Here, the terms "years of teaching service," and "creditable service" become synonymous as applied to ex-combined group members and are concerned only with time. In contrast, the term "state deposit accumulations," defined as "the deposit made by the state in the

retirement deposit fund on behalf of any member," *is clearly concerned only with money.*

*Id.* at 46 (emphasis added). The court found it significant that a combined group waiver resulted merely in a loss of a member's right to "state deposit accumulations." *Id.* Therefore, the court concluded: "under the clear, plain language of sec. 42.242(5), Stats., we hold that Schmidt only waived his right to *money which accumulated in his retirement fund* through state deposits, nothing else. His years of [teaching] service *remained on his record . . . ." Id.* (emphasis added).

¶ 55. Therefore, under *Schmidt,* the plaintiffs in this case clearly retained their years of teaching service on their records after they signed combined group waivers. However, that fact does not resolve the present dispute. *Schmidt* simply did not address the dispositive issue in this case: whether years of teaching service on a teacher's record constitute "a credit" in the retirement deposit fund, such that a teacher continues to be a "member" after withdrawing all monies from said fund. Thus, the fact that the plaintiffs in this case signed combined group waivers prior to the creation of the formula group is simply not relevant to the resolution of this case. What is at issue is whether the plaintiffs here possessed "a credit" in the retirement deposit fund after they took separation benefits and withdrew all the money in their retirement deposit fund accounts.

¶ 56. While *Schmidt* did not directly address this issue, its rationale nonetheless undercuts the majority's conclusion that years of teaching experience on a teacher's record constitute "a credit" in the retirement deposit fund. *See* majority op., ¶ 36. *Schmidt* clearly drew a sharp distinction between "money which accumulated in [the plaintiff's] retirement fund," and "years

647

of service [that] remained on his record." *Schmidt,* 153 Wis. 2d at 46. If "years of teaching service" or "creditable service" is part of the retirement *fund,* as the majority asserts, then the distinction *Schmidt* drew is meaningless and the rationale of *Schmidt* comes unraveled.

¶ 57. While *Schmidt* stated that when a combined group member made required deposits, "a year of teaching experience would be credited to that teacher within the retirement *system," id.* at 42 (emphasis added), it did not hold that years of teaching experience were "a credit" within the retirement deposit *fund.* Indeed, it specifically ruled that deposits in the fund were "*clearly concerned only with money." Id.* at 46. *See also* Wis. Stat. § 42.20(2)(a)-(d) (defining "deposits" in the fund solely in relation to monetary contributions).

¶ 58. The majority erroneously concludes that because "the legislature specifically granted teachers credit for their creditable service[]" that "creditable service constitute[s] a credit in the retirement deposit fund . . . ." Majority op., ¶ 36. The majority reasons that the retirement deposit fund is not comprised solely of money and includes "creditable service," even though it cannot point to any statute "regarding where a teacher's creditable service remains[.]" Majority op., ¶ 36. The majority's reasoning in this regard is in contravention of both common sense and the definition of the words "fund" and "credit."

¶ 59. The pertinent statutes do not define the terms "fund" or "credit." However, if these terms are accorded their common, ordinary meaning when read in the context in which they appear in chapter 42, it is clear that the retirement deposit "fund" is comprised solely of money and that a "credit" refers to a positive balance in a teacher's retirement deposit fund account. *See Wis. Citizens Concerned for Cranes and Doves,* 270

Wis. 2d 318, ¶ 6 (unless specifically defined, nontechnical words in a statute are accorded their common everyday meaning and are read in the context of the statute in which they appear)(citing Wis. Stat. § 990.01(1) (1999–2000)).

¶ 60. The ordinary definition of "fund" is "[a] sum of money or other resources set aside for a specific purpose: *a pension fund." The American Heritage Dictionary of the English Language* 735 (3d. ed. 1992)(emphasis in original). *See also Black's Law Dictionary* 682 (7th ed. 1999)(defining "fund" as "[a] sum of money or other liquid assets established for a specific purpose"). This definition of "fund" comports with the context in which the term is utilized in chapter 42. The retirement deposit fund is a sum of money set aside for teachers' retirement.

¶ 61. Chapter 42 indicates that the term "fund" is utilized in a financial context. Wisconsin Stat. § 42.33(1) provides, in pertinent part: "The state teachers retirement board shall at all times maintain assets: . . . (b) In the 'Retirement Deposit Fund' equal to the liabilities for member deposits and for state deposits for members of the separate group and the combined group and interest accretions[.]" *See also* Wis. Stat. § 42.243(5)(c); Wis. Stat. § 42.243(6)(c); Wis. Stat. § 42.45(1)(d); Wis. Stat. § 42.46(1); Wis. Stat. § 42.475 (all describing a member's account in the state retirement fund being credited with member contributions, state deposits, and interest and discussing the withdrawal, payment, and maintenance of such monies).

¶ 62. In addition, *Schmidt,* 153 Wis. 2d at 46, explicitly stated that a teacher who signed a combined group waiver "only waived his right to *money which accumulated in his retirement fund through state deposits."* (Emphasis added.) Likewise, Wis. Admin. Code

§ TR 4.01 (Sept., 1964) specifically distinguishes between "years of teaching experience" being "counted as within the system" and "required deposits" being "paid into the fund," by stating that years of teaching experience are not to be counted within the system until any required deposits plus interest are paid into the fund.

¶ 63. In short, the "retirement deposit fund" is a *fund* comprised of monetary *deposits* established for the purpose of teacher *retirement.*

¶ 64. Given that § 42.33(1) specifically states that the retirement deposit fund's assets are teacher deposits, state deposits, and accrued interest, the majority's conclusion that "it is reasonable to construe the retirement deposit fund as encompassing more than simply a lockbox for money[]" is entirely unfounded and anything but reasonable. Majority op., ¶ 36. The majority's conclusion that a repository of money earmarked for a particular purpose (a fund) can be comprised of something other than money is inexplicable in light of the statutory language. Notably, the majority cites to no statute, administrative rule, or case for the proposition that the "retirement deposit fund" may contain something other than money. It simply declares it to be so. Simply put, nowhere does chapter 42 speak of the retirement deposit fund being credited with, consisting of, or containing anything other than money.

¶ 65. Next, the majority compounds this error by concluding that creditable service constitutes "a credit" in the retirement deposit fund. Majority op., ¶ 36. The majority reasons that creditable service must be a " 'credit' in the retirement deposit fund" because "the legislature specifically granted teachers credit for creditable service." *Id.* This reasoning conflates the use of the word "credit" in its colloquial sense and its use in the statute in the accounting context. When used as a verb

650

in its colloquial sense, "credit" means "[t]o ascribe to a person; attribute." *The American Heritage Dictionary of the English Language* 439 (3d. ed. 1992). This is the usage of "credit" in *Schmidt,* which stated: "If the teacher made the required deposit when due for each year of service as a teacher, then . . . a year of teaching experience would be *credited* to that teacher within the retirement system." *Schmidt,* 153 Wis. 2d at 42 (emphasis added).

¶ 66. In contrast, the word "credit," when used as a noun in § 42.20(6r)(a) in relation to a sum of money, clearly means a "positive balance or amount remaining in a person's account." *The American Heritage Dictionary of the English Language,* 439 (3d. ed. 1992). *See also Black's Law Dictionary* 374 (7th ed. 1999) (defining "credit" as "[t]he availability of funds either from a financial institution or under a letter of credit" and "credit balance" as "[t]he status of an account when the sum of the credit entries exceeds the sum of the debit entries.").[5]

¶ 67. Given that the retirement deposit fund is a sum of money established for a particular purpose—teacher retirement—and possesses assets consisting of state deposits, member contributions, and accrued interest, a "credit" in the fund is plainly a positive account balance. Other provisions of chapter 42 clearly utilize the word "credit" or "credited" in its financial sense

_____

[5] The following example illustrates this difference in usage. A college student may *receive credit* for completed coursework or *be credited* with completing his major, but that does not mean he possesses *a credit* in his account at the bursar's office. The majority's holding is the equivalent of saying the student has a credit in his account at the bursar's office because he received credit for all the classes he took last semester. Neither makes any sense.

when discussing the retirement deposit fund. When used as a verb in the accounting or financial context, "credit" means "[t]o enter as a credit[,]" "[t]o make a credit entry in" an account, *The American Heritage Dictionary of the English Language* 439 (3d. ed. 1992), or "[t]o enter (as an amount) on the credit side of an account." *Black's Law Dictionary* 374 (7th ed. 1999).

¶ 68. For example, § 42.243(6)(c) states that "[c]apital gains and losses will be *credited to the individual accounts* in the retirement deposit fund only on *amounts* that have been on deposit for the full year . . . ." (Emphasis added.) Likewise, § 42.243(5)(c) states that "[e]arnings will be *credited to the individual accounts* in the retirement deposit fund only on *amounts* which have been on deposit for the full year . . . ." (Emphasis added.) Finally, § 42.45(1)(d) states that "[a]ll state deposits shall be credited as of June 30."

¶ 69. No statute speaks of years of teaching experience or creditable service being placed in individual *accounts* in the retirement deposit *fund*. Further, *Schmidt* itself stated that years of teaching experience "remained on [a teacher's] *record*[;]" it did not say that years of teaching service or creditable service are placed *in the fund. Schmidt,* 153 Wis. 2d at 46 (emphasis added). *See also id.* at 42 (noting that years of teaching service are credited "within the retirement *system*[,]" not the fund)(emphasis added). Thus, while years of teaching service remain on a teacher's record and are credited or attributed to a teacher under the retirement system, *Schmidt,* 153 Wis. 2d at 42, 46, years of teaching experience do not themselves constitute "*a credit* in the retirement deposit fund . . . ." Wis. Stat. § 42.20(6r)(a) (emphasis added).

¶ 70. The majority cannot cite a single provision of chapter 42 that speaks of years of teaching experience or creditable service being placed in the retirement deposit *fund* or as constituting *a credit* within the retirement deposit *fund.* The majority essentially admits that no such statute exists. Majority op., ¶ 36. There is simply no authority to support the majority's contention that a teacher's years of teaching service are placed in the fund. Again, the majority, by judicial fiat, simply declares it to be .so. However, it is clear that a teacher's "years of service *remain[] on his record . . . ."* *Schmidt,* 153 Wis. 2d at 46 (emphasis added).

¶ 71. As noted by the majority, creditable service is a variable utilized in the statutory formula for determining the retirement benefit of a teacher in the formula group. Majority op., ¶¶ 8, 15. In other words, the retirement benefit is a function of creditable service and other factors. *Id.* Creditable service is simply a means of calculating the ultimate retirement benefit. A year of teaching service under the combined group was "creditable" if the teacher made the required deposits into his retirement deposit account. *Schmidt,* 153 Wis. 2d at 42.

¶ 72. Thus, "creditable service" is a concept for determining which years of teaching experience "count" or are attributable to a teacher for purposes of the formula calculating the formula group retirement benefit. *See id.* at 39 (noting that creditable service is a "factor in computing the size of the retirement benefit"); *id.* at 44 (noting that not all years of teaching service are creditable for purposes of determining a retirement benefit). Creditable service is not itself a type of capital resource that can earn interest or be transferred, deposited, or withdrawn.

¶ 73. Given the nature of what creditable service is, if one accepts the proposition that creditable service truly is placed "in" the fund as a "credit," it necessarily follows that "creditable service" is never used up; it is never *withdrawn* from the account.[6] This logical corollary has serious consequences and renders incomprehensible several of the statutory subcategories of "members."

¶ 74. An "active member" is defined as "a *member* who is not receiving an annuity . . . and who has made a *required deposit* in the retirement deposit fund . . . ." Wis. Stat. § 42.20(6r)(b)1. (emphasis added). Notably, the definition of active member incorporates the definition of "member," which requires "a credit" in the fund. Under a correct reading of the terms "fund" and "credit," an active member is a teacher who made required state deposits in the fund, *see Schmidt,* 153 Wis. 2d at 42, and has a "credit" or positive balance in the fund.

¶ 75. Similarly, an "inactive member" is "a member who is not receiving an annuity . . . who has not made a required deposit in the retirement deposit fund . . . ." Wis. Stat. § 42.20(6r)(b)2. Thus, an inactive member is someone who has a positive balance in his retirement deposit fund account (from past contributions, state contributions and/or interest) but who is not currently making required deposits. Finally, a "retired member" is "a member who is receiving an annuity . . . ." Wis. Stat. § 42.20(6r)(b)3. Thus, a retired member is a teacher who is receiving an annuity and possesses a positive balance in his retirement deposit fund account.

---

[6] Indeed, the majority's holding that creditable service remains in the fund even if a teacher has withdrawn all of his money compels such a conclusion. Majority op., ¶¶ 35–36.

¶ 76. Because all three of the above classifications incorporate the definition of "member," the majority's reasoning results in the conclusion an active member, inactive member, or retired member need not have any money in their retirement deposit fund account. According to the majority, simply possessing a creditable service "credit" "in" the fund renders one a member of STRS.

¶ 77. Thus, under the majority's interpretation, a teacher would qualify as an "inactive member" if he had not made required contributions and had depleted all of the funds in his account, as long as he had earned "creditable service" at some point. He would qualify as "a *member* who is not receiving an annuity . . . who has not made a required deposit in the retirement deposit fund . . . ." Wis. Stat. § 42.20(6r)(b)2. (emphasis added).

¶ 78. Likewise, a teacher who signed a combined group waiver in 1965, took a separation benefit, depleted all of the funds in his account, and never returned to teaching would still be a "member" in 2005 because he would be entitled to his creditable service for his years of teaching as a combined group member and that creditable service, according to the majority, remains "in" the retirement deposit fund as "a credit." Thus, under the majority's interpretation, there is no difference between an "inactive member" and a teacher who has altogether left teaching.

¶ 79. Further, under the majority's interpretation, a member who retires, takes an annuity, and subsequently depletes all of the funds in his retirement deposit fund account would still be a "member" 30 years later and would meet the definition of "inactive member." Even though he is no longer receiving an annuity and has no money in his account (and thus not a "retired member"), and is not making required deposits

655

(because he is no longer teaching), he would still have creditable service "in" his account, according to the majority's logic. Thus, under the majority's reasoning, anyone who was ever a Wisconsin teacher becomes a perpetual "inactive member" of STRS because his creditable service would always remain as a "credit" "in" his account.

¶ 80. Teachers across the state and the Department of Employee Trust Funds will certainly be surprised to learn that a teacher can never dissociate himself with the STRS so long as he earned creditable service at some point. The conclusion that any Wisconsin teacher who earned creditable service will become a perpetual "inactive member" is not simply a slippery slope argument or hyperbole; rather, it is a direct logical consequence given the statutory definitions and the majority's conclusion that creditable service constitutes "a credit" in the retirement deposit fund and remains in the fund after a teacher has withdrawn all monetary deposits from the fund.

¶ 81. Ultimately, the majority's conclusion in this case rests on flawed, circular reasoning. The majority reasons as follows: the plaintiffs are entitled to creditable service for their years of teaching prior to 1971 because the waivers they signed in 1971 were really combined group waivers (not waiving creditable service), as the plaintiffs were placed in the wrong retirement group when they returned to teaching after 1965; the plaintiffs should have continued as combined group members when they returned to teaching after 1965 because they were still "members" of STRS when the formula group was created; the plaintiffs were still "members" because they had a "credit" in the retirement deposit fund, despite the fact that they had no money in their accounts; the plaintiffs had a "credit" in the fund

656

because they were entitled to creditable service. Thus, according to the majority, the plaintiffs are entitled to creditable service because they are entitled to creditable service.

¶ 82. In accordance with the plain language of the applicable statutes, the overall statutory scheme, and common sense, I would conclude that when the plaintiffs left teaching prior to the creation of the formula group, took separation benefits, and withdrew all of the money in their retirement deposit fund accounts, they ceased to be "members" of the STRS, as that term is defined in § 42.20(6r)(a). The plaintiffs were no longer "members" because they withdrew all of their money in their retirement accounts and therefore no longer possessed "a credit" in the retirement deposit "fund," which is comprised solely of money. Because they were no longer "members" after they depleted the funds in their accounts, they were correctly enrolled as formula group members when they returned to teaching after November 30, 1965, pursuant to § 42.244(1)(d). As they were correctly enrolled as formula group members when they returned to teaching, the waivers they signed in 1971 were formula group waivers, which constituted a "full and complete discharge and release of all right, interest or claim on the part of the member to state deposit accumulations *and to any benefit arising under any provision of ss. 42.20 to 42.54.*" Wis. Stat. § 42.245(4) (emphasis added). Because the plaintiffs signed this broad formula group waiver, they waived the right to any creditable service that remained on their record for years of teaching prior to 1971. As such, the plaintiffs are not entitled to "creditable service" under the Wisconsin Retirement System, § 40.02(17) (1981), for the time they taught prior to 1971.

¶ 83. This conclusion is more than "plausible," majority op., ¶ 33; it is the only conclusion that is consistent with the pertinent statutory language, *Schmidt,* and common sense. While the result of the majority opinion grants the plaintiffs some extra retirement money, it simply cannot be justified based on the pertinent statutes. No amount of construction or interpretation can contort "a credit" in a "fund" into anything other than money.

¶ 84. For the foregoing reasons, I respectfully dissent.

¶ 85. I am authorized to state that Justice DAVID T. PROSSER JR. joins this dissent.