Andrea ASHFORD, Petitioner-Appellant,

v.

DIVISION OF HEARINGS & APPEALS, Respondent-
Respondent.

Court of Appeals

*No. 92–2382. Submitted on briefs March 10, 1993.—Decided
May 5, 1993.*

(Also reported in 501 N.W.2d 824.)

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *John Pray* of *Legal Assistance Program, University of Wisconsin Law School* of Madison.

On behalf of the respondent-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Mary E. Burke*, assistant attorney general.

Before Nettesheim, P.J., Brown and Anderson, JJ.

BROWN, J. Andrea Ashford appeals from an order denying a writ of certiorari contesting his parole

revocation. The issue is whether a person serving consecutive sentences is subject to parole revocation and reimprisonment for the remainder of both sentences if he or she commits a parole violation prior to discharge of the first sentence. We affirm because the statutory language unambiguously requires revocation on all sentences if a parole violation is committed.

In 1984 Ashford was convicted of robbery and sentenced to five years in prison. In 1987 his mandatory release date occurred and he began serving parole. He violated parole on August 12, 1987 and was charged with retail theft as a repeat offender. Ashford's parole was revoked on December 3, and on December 17 he was sentenced to three years in prison for retail theft. Ashford's theft sentence was to be consecutive to the robbery sentence. The theft and robbery sentences were aggregated for the purpose of determining a mandatory release date of February 27, 1990.

Ashford was again released on parole on February 27, 1990. At that time, he had accumulated ten months and twelve days of good time[1] on the robbery sentence, and had eleven months and nineteen days remaining to be served on the theft sentence. The total time on parole was calculated at one year, ten months and one day. On December 28, 1990, Ashford violated the conditions of his parole. The division of hearings and appeals revoked his parole on both sentences on March 28, 1991. The revocation was affirmed on appeal. The state then ordered forfeiture of all good time on the robbery sentence and reincarcerated Ashford for the remainder of his sentence. The remainder was calculated by

---

[1] We refer to "good time" on the robbery sentence because Ashford served his prison time on that sentence when the statutes allowed for accumulation of good time. *See* sec. 53.11, Stats. (1981–82).

38

adding the good time forfeited to the time remaining on the theft sentence.

After the state ordered forfeiture of his good time and the time served on parole for the theft sentence, Ashford filed a *pro se* writ of certiorari, claiming that the state did not have the authority to revoke the portion of his parole corresponding to the theft sentence because he had not begun serving that portion of his parole when he committed the violations. The circuit court denied the writ and affirmed the parole revocation. Ashford now appeals.

█

We first address the state's assertion that Ashford waived his arguments by failing to raise them at the administrative level. We assume without deciding that the arguments were waived. However, we may address waived issues if they are questions of law that will have important public policy implications. *See In re Hulett*, 6 Wis. 2d 20, 27, 94 N.W.2d 127, 131 (1959). We anticipate that Ashford's interpretation of the mandatory release statute will arise in the future and that resolution of this issue will have an impact on parole policies in the future. We therefore choose to address the substantive issues raised by this appeal.

█

This case requires us to interpret and apply sec. 302.11, Stats., which governs mandatory release parole.[2] Statutory interpretation is a question of law,

---

[2] Section 302.11, Stats., states in relevant part:

**Mandatory release.** (1) . . . Except as provided in subs. (1m), (7) and (10), each inmate is entitled to mandatory release on parole by the department. . . .

. . . .

(3) *All consecutive sentences shall be computed as one continuous sentence.*

and our review is *de novo. In re K.N.K,* 139 Wis. 2d 190, 199, 407 N.W.2d 281, 286 (Ct. App. 1987).

The thrust of Ashford's arguments is that sec. 302.11, Stats., is ambiguous. A statute is ambiguous if reasonably well-informed people could interpret it in two or more different ways. *Ervin v. City of Kenosha,* 159 Wis. 2d 464, 472, 464 N.W.2d 654, 657–58 (1991). However, a statute is not ambiguous simply because people disagree about its meaning. *National Amusement Co. v. DOR,* 41 Wis. 2d 261, 267, 163 N.W.2d 625, 628 (1969).

Ashford's first argument is that the state lacks the authority to revoke his parole on both of two consecutive sentences. He claims,

> [S]imultaneous revocation on consecutive sentences violates the sentencing court's order that Sentence B run consecutive to Sentence A. In other words, if a parolee is subject to simultaneous revocation of the parole portions of consecutive sentences, the sentences cannot be fairly regarded as consecu-

----

. . . .

(6) . Any inmate released on parole under sub. (1) . . . is subject to all conditions and rules of parole *until the expiration of the sentence* or until he or she is discharged by the department. . . .

. . . .

(7)(a) The division of hearings and appeals in the department of administration, upon proper notice and hearing . . . may return a parolee released under . . . sub. (1) . . . to prison *for a period up to the remainder of the sentence* for a violation of the conditions of parole. *The remainder of the sentence is the entire sentence, less time served in custody prior to parole.* . . .

(b) A parolee returned to prison for violation of the conditions of parole shall be incarcerated for the entire period of time determined by . . . the division of hearings and appeals in the department of administration . . . . [Emphasis added.]

tive—rather, they have the quality of being both consecutive and concurrent to each other.

According to Ashford, the fact that his sentences were ordered consecutive to each other means that his parole time must be conceptualized consecutively: he will first serve parole on the robbery sentence, after which he will serve parole on the theft sentence.

Furthermore, Ashford claims that sec. 302.11, Stats., is ambiguous because it is "silent on the issue of what sentences a parolee is serving at any given time." He asks us to conclude that sec. 302.11(3) applies only to the calculation of prison time and "is structurally and analytically distinct from the parole revocation context." He states:

> When a defendant is sentenced to two or more *consecutive* terms, however, a question arises that is the central issue in this appeal: upon release on parole, is he simultaneously serving the parole portion of *all* of his sentences, or is he serving the parole portion of *each* of his sentences in succession, i.e., consecutively? The statutes do not specify which sentence or sentences a parolee is serving at any given time.

Again, Ashford claims that his parole should be viewed as two distinct time periods, with parole on the robbery conviction expiring before parole on the theft conviction begins. This view, he argues, precludes revocation on both sentences if a parole violation occurs before the first sentence is discharged.

The state responds that sec. 302.11, Stats., is not ambiguous. By reading sec. 302.11(3) in conjunction with sec. 302.11(7)(a) and (b), the state concludes that Ashford can be returned to prison for the remainder of his sentence, which is the aggregate of his robbery and theft sentences. We agree with the state.

41

If a statute is clear and unambiguous, we must apply its plain meaning without resorting to rules of statutory construction. *State v. Krause,* 161 Wis. 2d 919, 926, 469 N.W.2d 241, 244 (Ct. App. 1991). Section 302.11(3), Stats., requires that all consecutive sentences be computed as one continuous sentence. The statement is not limited in purpose to the calculation of the mandatory release date. Rather, it is a general statement about how sentences are to be computed in the mandatory release parole context.

Furthermore, sec. 302.11(7)(a), Stats., clearly authorizes reincarceration *for the remainder of the sentence* when a parole violation occurs. The remainder of the sentence is equal to the total sentence minus the time spent in custody prior to parole. Section 302.11(7)(a). If consecutive sentences are computed as one continuous sentence, the remainder of the sentence referred to in sec. 302.11(7)(a) must be the remainder of the aggregate sentence. The unambiguous language of sec. 302.11 gives the state the authority to revoke Ashford's parole on both the theft and the robbery convictions and to reincarcerate him for the time remaining on both convictions.

Even if we were to conclude that the statute is ambiguous, we would still agree with the state because rules of statutory construction lead us to the same result. If a statute is ambiguous, we may look to the statute's context, subject matter, history, and objective to determine the intent of the legislation. *State v. Moore,* 167 Wis. 2d 491, 496, 481 N.W.2d 633, 635 (1992).

42

Rather than focusing on the definition of sentences as consecutive or concurrent, we accept the state's invitation to focus on the meaning of the word "sentence." "As employed in the language of the criminal law, a sentence of imprisonment is a term of incarceration or supervision on parole which continues until the defendant is finally discharged." *State v. Grobarchik,* 102 Wis. 2d 461, 468, 307 N.W.2d 170, 175 (1981). In other words, parole is merely a less restrictive form of supervision than incarceration.

As the state points out, insertion of the common law definition of "sentence" into sec. 302.11, Stats., yields the following:

> (3)  All consecutive *terms of incarceration or supervision on parole* shall be computed as one continuous *term of incarceration or supervision on parole.*
>
> . . . .
>
> (7)(a)  The division of hearings and appeals in the department of administration, upon proper notice and hearing . . . may return a parolee released under . . . sub. (1) . . . to prison for a period up to the remainder of the *term of incarceration or supervision on parole* for a violation of the conditions of parole. The remainder of the *term of incarceration or supervision on parole* is the entire *term of incarceration or supervision on parole,* less time served in custody prior to parole. . . .

Thus, parole is an integral part of the sentence; it does not get redefined as a separate entity when the period of incarceration ends. Once consecutive sentences are aggregated and a mandatory release date is set, parole is aggregated into a single term as

well. When parole is revoked, *all* of it may be revoked regardless of the amount of parole already served. In this case, Ashford's parole was properly revoked, even though the parole time attributable to his robbery conviction had not yet expired when he violated the parole conditions.

■

Our decision is supported by the fact that the interpretation urged by Ashford would lead to absurd results. We will not interpret a statute in a way that produces absurd results. *Moore,* 167 Wis. 2d at 496, 481 N.W.2d at 635. Under Ashford's method of parole time computation, a parolee serving consecutive sentences on several crimes could be reincarcerated and released multiple times before his sentence was finally discharged. In addition, which parole was revoked would be dependent upon which sentence was being served at the time of a violation.

In Ashford's situation, no problem would arise under his interpretation of sec. 302.11, Stats., because his crimes occurred at two different times. However, if a person were simultaneously convicted of several offenses, the state would be required to make arbitrary decisions about which sentence would be served first when parole started. The present law avoids these problems by clearly aggregating all consecutive sentences into one continuous sentence.

■

Finally, parole is a statutorily created privilege that grants conditional freedom to a parolee. *See State ex rel. Johnson v. Cady,* 50 Wis. 2d 540, 548, 185 N.W.2d 306, 310 (1971). A prisoner has no constitutional right to parole. *Id.* at 545, 185 N.W.2d at 309. The legislature has authorized the state to revoke a parolee's conditional freedom if a parolee fails to com-

ply with conditions of parole. This potential forfeiture of parole, provides the leverage with which the state gains compliance with parole conditions. *See Morrissey v. Brewer,* 408 U.S. 471, 478–79 (1972).

Ashford's freedom was conditional upon his compliance with the parole conditions. He violated those conditions and must now pay the price by forfeiting his freedom and returning to prison. If we were to accept Ashford's interpretation of parole, we would be decreasing the leverage given to the state by the legislature. We would also be depreciating the severity of Ashford's violation by imposing a lesser penalty than was intended by the legislature. We decline to reduce the state's authority in this way. We affirm the trial court's decision affirming the department's revocation of Ashford's parole and reincarcerating him for the remainder of his sentence.

*By the Court.*—Order affirmed.