STATE of Wisconsin EX REL. Kevin THOMAS,
Petitioner-Appellant,

v.

David H. SCHWARZ, Administrator, Division of
Hearings and Appeals and Matthew J. Frank,
Secretary, Department of Corrections,
Respondents-Respondents-Petitioners.

Supreme Court

*No. 2005AP1487. Oral argument January 16, 2007.
—Decided May 22, 2007.*

2007 WI 57

(Also reported in 732 N.W.2d 1.)

381

For the respondents-respondents-petitioners there were briefs and oral argument by *Christopher G. Wren,* assistant attorney general, with whom on the brief was *Peggy Lautenschlager,* attorney general.

For the petitioner-appellant there was a brief by *Michael D. Kaiser* and *Kaiser Law Offices,* Hartland, and oral argument by *Michael D. Kaiser.*

¶ 1. N. PATRICK CROOKS, J. This is a review of an unpublished decision of the court of appeals,[1] reversing an order of the Milwaukee County Circuit Court, Judge Clare L. Fiorenza presiding, which affirmed a decision of the Administrator of the Division of Hear-

---

[1] *State ex rel. Thomas v. Schwarz,* No. 2004AP1487, unpublished slip op. (Wis. Ct. App. July 5, 2006).

ings and Appeals (the Division) holding that the Division had jurisdiction to revoke both Kevin Thomas' parole and extended supervision at the same time.

¶ 2.   In the petition for review, David H. Schwarz, Administrator of the Division, and Matthew J. Frank, Secretary of the Department of Corrections (the DOC) (collectively, Schwarz), ask this court to answer the question of whether the court of appeals erred in interpreting Wisconsin sentencing statutes when it held that the Division lacked jurisdiction simultaneously to revoke parole and extended supervision of a person serving consecutive indeterminate and determinate sentences. Schwarz also asks this court to determine whether the court of appeals applied the correct standard of deference to the interpretation and application of the Truth-in-Sentencing (TIS) statutes by the Division.

¶ 3.   We hold that the Division acted properly, and within its jurisdiction, in revoking Kevin Thomas' parole and extended supervision simultaneously, since here the consecutive indeterminate and determinate sentences were properly treated as one continuous sentence, with the confinement periods served first, followed by continuous nonconfinement periods of parole and extended supervision. We further hold that the issue presented in this case is one of first impression, so that no deference to the decision of the Division is warranted.

¶ 4.   The decision of the court of appeals is, therefore, reversed, and the decision of the Division is reinstated.

I

¶ 5.   On June 30, 1999, Kevin Thomas (Thomas), also known as Fernando Thomas, pleaded guilty to, and

was convicted of, two counts of forgery in Milwaukee County Circuit Court. On August 17, 1999, the court imposed an indeterminate sentence of two years of imprisonment on each count of forgery, consecutive to each other. The court stayed the sentence and placed Thomas on probation for a five-year period. On April 6, 2000, Thomas pleaded guilty to, and was convicted of, one count of burglary in Milwaukee County Circuit Court.

¶ 6.   Thomas' probation was revoked on April 21, 2000, as a result of actions giving rise to the burglary charge. Thomas then began serving the two consecutive two-year sentences for the forgery convictions. On May 8, 2000, Thomas was sentenced to a determinate, consecutive eight-year sentence for the burglary conviction, consisting of three years of initial confinement and five years of extended supervision.

¶ 7.   Thomas completed the Challenge Incarceration Program while serving his sentence and, consequently, the circuit court, Judge Jeffrey A. Conen presiding, amended the judgment of conviction and sentence in the burglary case. The court ordered Thomas to serve an eight-year sentence consisting of zero years of confinement and eight years of extended supervision.

¶ 8.   On August 27, 2001, the DOC released Thomas to parole and, it asserts, extended supervision. On February 2, 2004, Thomas was taken into custody for allegedly violating the conditions of his parole and extended supervision. The alleged violations included possession and sale of heroin, consumption of heroin, possession and consumption of methadone, operating a motor vehicle without prior approval from his parole agent and without a valid driver's license, and failing to report to his parole agent for an office visit.

¶ 9.   The DOC sought revocation of both Thomas' parole and extended supervision simultaneously. A revocation hearing took place in front of an administrative law judge (ALJ)[2] on March 16, 2004. Thomas moved to dismiss the proceedings for revocation of extended supervision. Thomas argued that parole and extended supervision are two separate sentences, not one continuous period of supervision. He argued that he had not yet commenced serving the extended supervision in the burglary case and that, therefore, it could not be revoked.

¶ 10.   The ALJ concluded that changes to the sentencing statutes due to TIS[3] had not been intended to change the existing law that all consecutive sentences are served as one continuous sentence. The ALJ concluded that Thomas had committed all of the alleged violations and revoked his parole and extended supervision. The ALJ did not order any reincarceration time for the parole revocation in the forgery case, but recommended that the circuit court impose two years and fifteen days of reconfinement in the burglary case.

---

[2] Mayumi M. Ishii, who presided over Thomas' revocation hearing, is an ALJ in the Division of Hearings and Appeals and was acting on the Division's behalf.

[3] In June 1998 the legislature enacted Truth-in-Sentencing Part I (TIS-I), 1997 Wis. Act 283, which did away with the state's indeterminate sentencing system and put a determinate sentencing system in place. *See* Michael B. Brennan, Thomas J. Hammer, and Donald V. Latorraca, *Fully Implementing Truth-in-Sentencing,* 75 Wis. Law. 10, 11 (November 2002). The TIS-I legislation applies to felonies committed on and after Dec. 31, 1999. *Id.*

Then, in July 2002 Governor Scott McCallum signed Truth-in-Sentencing Part II (TIS-II), 2001 Wis. Act 109, into law. *Id.* at 12. The TIS-II legislation included new crime classifications and other substantive and procedural law changes. *Id.*

¶ 11. Thomas appealed the ALJ's decision to the Division, challenging only the revocation of his extended supervision. Schwarz, as Division Administrator, sustained the ALJ's decision, reasoning that Wis. Stat. § 302.113(4) (2003–04)[4] plainly indicates the legislature's intent to continue the long-standing practice of treating consecutive sentences as one single, continuous sentence for TIS cases.

¶ 12. Thomas appealed the decision of the Division to the Milwaukee County Circuit Court, Judge Clare L. Fiorenza presiding, which affirmed the Division's decision. Thomas then sought review in the court of appeals, which reversed and remanded, with Judge Ralph Adam Fine dissenting.

¶ 13. The court of appeals noted that Thomas was not challenging his parole revocation, but rather, was arguing that his extended supervision could not be revoked, because it had not yet begun at the time he was on parole. The court of appeals applied a de novo standard of review, holding that this case is one of first impression.

¶ 14. The court of appeals looked at the relevant case law and statutes that were in effect prior to TIS. The court of appeals noted that in *Ashford v. Division of Hearings and Appeals,* 177 Wis. 2d 34, 501 N.W.2d 824 (Ct. App. 1993), the court had rejected the defendant's argument that parole should be viewed as two distinct time periods, with parole on one sentence expiring before parole on the other sentence began. At the time *Ashford* was decided, Wis. Stat. § 302.11 (1991–92) provided in relevant part:

---

[4] All subsequent references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

387

(3) All consecutive sentences shall be computed as one continuous sentence.

. . . .

(7)(a) The division of hearings and appeals in the department of administration, upon proper notice and hearing . . . may return a parolee released under . . . [mandatory release] to prison for a period up to the remainder of the sentence for a violation of the conditions of parole. The remainder of the sentence is the entire sentence, less time served in custody prior to parole. . . .

The court of appeals noted that the legislature eliminated the language in Wis. Stat. § 302.11(3) (1991–92) that said, "All consecutive sentences shall be computed as one continuous sentence" and replaced it with, "All consecutive sentences imposed for crimes committed before December 31, 1999, shall be computed as one continuous sentence." *See* Wis. Stat. § 302.11(3).

¶ 15. The court of appeals also noted that the legislature created Wis. Stat. § 302.113(4) as part of TIS[5]. Section 302.113(4) provides: "All consecutive sentences imposed for crimes committed on or after December 31, 1999, shall be computed as one continuous sentence. The person shall serve any term of extended supervision after serving all terms of confinement in prison." The court of appeals stated that the current

---

[5] Wisconsin Stat. § 302.113(4) (1997–98), adopted as part of TIS-I, provided: "All consecutive sentences shall be computed as one continuous sentence. The person shall serve any term of extended supervision after serving all terms of confinement in prison." This provision was later amended to its current version as part of TIS-II. The version amended by TIS-II is the applicable version in this case.

version of Wis. Stat. § 302.11(3) indicates that all consecutive indeterminate sentences shall be treated as one continuous[6] sentence, and that § 302.113(4) indicates that all consecutive determinate sentences shall be treated as one continuous sentence.

¶ 16. The court of appeals also examined Wis. Stat. § 973.15(2m)(c) and (d)[7], and determined that those statutory provisions indicate how concurrent sentences are handled when the defendant is confined,

---

[6] The *American Heritage Dictionary* defines "continuous" as "uninterrupted in time, sequence, substance, or extent." *American Heritage Dictionary* 408 (3d ed. 1992).

[7] Wisconsin Stat. § 973.15(2m)(c) and (d) provides:

(c) Determinate sentences imposed to run concurrent with or consecutive to indeterminate sentences. 1. If a court provides that a determinate sentence is to run concurrent with an indeterminate sentence, the person sentenced shall serve the period of confinement in prison under the determinate sentence concurrent with the period of confinement in prison under the indeterminate sentence and the term of extended supervision under the determinate sentence concurrent with the parole portion of the indeterminate sentence.

2. If a court provides that a determinate sentence is to run consecutive to an indeterminate sentence, the person sentenced shall serve the period of confinement in prison under the determinate sentence consecutive to the period of confinement in prison under the indeterminate sentence.

(d) Indeterminate sentences imposed to run concurrent with or consecutive to determinate sentences. 1. If a court provides that an indeterminate sentence is to run concurrent with a determinate sentence, the person sentenced shall serve the period of confinement in prison under the indeterminate sentence concurrent with the period of confinement in prison under the determinate sentence and the parole portion of the indeterminate sentence concurrent with the term of extended supervision required under the determinate sentence.

2. If a court provides that an indeterminate sentence is to run consecutive to a determinate sentence, the person sentenced shall

and when the defendant is released on parole and extended supervision. The court of appeals determined that § 973.15(2m)(c) and (d) provides for how the confinement portions of consecutive sentences are to be served. The court noted that what is missing from § 973.15(2m)(c)2. and (d)2. is language that would mirror the parole and extended supervision provisions in § 973.15(2m)(c)1. and (d)1.

¶ 17. The court of appeals then stated that the legislative history gives insight into the lack of such provisions in Wis. Stat. § 973.15(2m)(c)2. and (d)2. that explain how to handle consecutive parole and extended supervision. The court noted that the Criminal Penalties Study Committee (the CPSC) was established by the legislature to make recommendations and proposals related to TIS legislation. One of the recommendations of the CPSC concerned persons subject to both pre-TIS (indeterminate) and TIS (determinate) sentences. The CPSC stated:

> The Committee recommends that in either sequence (indeterminate sentence followed by determinate sentence, or determinate followed by indeterminate), and regardless of whether the sentences are run concurrent with or consecutive to each other, all confinement time should be served together, either concurrently or consecutively in whatever sequence ordered by the courts; and extended supervision should always precede any parole time.

Criminal Penalties Study Comm., Final Report on 1997 Wis. Act 283, Truth in Sentencing at 102 (August 31, 1999). The court of appeals noted that the CPSC was

---

serve the period of confinement in prison under the indeterminate sentence consecutive to the period of confinement in prison under the determinate sentence.

construing parole and extended supervision separately and considered that sequencing important.

¶ 18. The court of appeals further noted that 2001 Wis. Act 109, which created Wis. Stat. § 973.15(2m)(c) and (d), included the following language, in relevant part:

> (c) Determinate sentences imposed to run concurrent with or consecutive to indeterminate sentences. . . .
>
> 2. If a court provides that a determinate sentence is to run consecutive to an indeterminate sentence, the person sentenced shall serve the period of confinement in prison under the determinate sentence consecutive to the period of confinement in prison under the indeterminate sentence *and the parole portion of the indeterminate sentence consecutive to the term of extended supervision under the determinate sentence.*
>
> (d) Indeterminate sentences imposed to run concurrent with or consecutive to determinate sentences. . . .
>
> 2. If a court provides that an indeterminate sentence is to run consecutive to a determinate sentence, the person sentenced shall serve the period of confinement in prison under the indeterminate sentence consecutive to the period of confinement in prison under the determinate sentence *and the parole portion of the indeterminate sentence consecutive to the term of extended supervision under the determinate sentence.*

*See* 2001 Wis. Act 109, § 1142 (emphasis added).

¶ 19. The court of appeals then noted that Governor Scott McCallum vetoed the underlined language, explaining that consecutive sentences are currently served in the order they are handed down from the court, which means parole is generally served before

extended supervision. Legislative Reference Bureau, Wisconsin Briefs 02–2 (Supplement): *Executive Vetoes of Bills Passed by the 2001 Wisconsin Legislature from May 3, 2002, through August 16, 2002,* August 2002 at 54. Adopting the proposed language would mean that, when sentences are served consecutively, sentences with extended supervision would be served first. *Id.* In his veto message, Governor McCallum explained:

> If an offender has a sentence with a parole provision and receives a consecutive sentence with an extended supervision provision, the extended supervision must be served first, requiring the shifting of dates for serving the first sentence. The dates for serving all other sentences will need to be adjusted, resulting in an increased potential for errors and litigation if an offender is held longer than the sentence that was imposed. *Id.*

¶ 20. The court of appeals emphasized that the governor's veto message did not assume that parole and extended supervision would be served as a continuous sentence in cases where the sentences were ordered to be served consecutively. The court of appeals also noted that Governor McCallum's veto message states that "parole is generally served before extended supervision." *Id.*

¶ 21. From the legislative history, the court of appeals concluded that the statutes do not mandate that consecutive sentences involving parole and extended supervision be served as a continuous sentence. The court of appeals held that Thomas, who was serving his determinate sentence consecutive to his indeterminate sentence, was serving parole first, and had not yet begun to serve extended supervision at the time he committed parole violations. The court therefore reversed the decision of the circuit court.

¶ 22. Judge Ralph Adam Fine dissented, stating that the majority did not explain why the Division lacked jurisdiction to revoke Thomas' parole and extended supervision. Judge Fine concluded that simultaneous revocation of parole and extended supervision was permitted by statute. He reasoned that, when Thomas was placed on parole in the pre-TIS case (the forgery case), Thomas had already completed his initial confinement in the TIS case (the burglary case), because of his participation in the Challenge Incarceration Program.

¶ 23. Judge Fine noted that persons sentenced under TIS are subject to Wis. Stat. § 302.113 and (2), which states in relevant part that "an inmate subject to this section is entitled to release to extended supervision after he or she has served the term of confinement in prison portion of the sentence imposed under s. 973.01, as modified by the sentencing court under . . . s. 302.045(3m)(b)1 . . . if applicable." Judge Fine reasoned that, since Thomas served the " 'term of confinement in prison portion of the sentence' " in the TIS case, he was released to extended supervision and could, at any time, have his extended supervision revoked if he violated its terms. *State ex rel. Thomas v. Schwarz,* No. 2004AP1487, unpublished slip op., ¶ 38 (Wis. Ct. App. July 5, 2006) (Fine, J., dissenting) (quoting Wis. Stat. § 302.113(2)).

¶ 24. Schwarz filed a petition for review with this court, which we granted.

II

¶ 25. This case involves statutory interpretation, an issue of law that this court reviews de novo. *Megal Dev. Corp. v. Shadof,* 2005 WI 151, ¶ 8, 286 Wis. 2d 105,

705 N.W.2d 645. This case also involves review of an agency decision. When reviewing an administrative agency's interpretation of statutes, this court generally applies one of three standards of review, with varying degrees of deference. *DaimlerChrysler v. LIRC*, 2007 WI 15, ¶ 15, 299 Wis. 2d 1, 727 N.W.2d 311; *Labor Ready, Inc. v. LIRC*, 2005 WI 153, ¶ 5, 285 Wis. 2d 506, 702 N.W.2d 27. The agency's determination is entitled to 'great weight' deference if the agency's experience, technical competence, and specialized knowledge aid the agency in its interpretation and application of the statute. *Labor Ready*, 285 Wis. 2d 506, 5 (citation omitted). If the agency decision is " 'very nearly' " one of first impression, it is entitled to " 'due weight' " deference. *Id.* (citation omitted). The de novo standard is applied where it is clear from the lack of agency precedent that the case is one of first impression for the agency, and the agency lacks special expertise and experience in determining that issue. *Id.*

¶ 26.  Schwarz argues that this court should apply great weight deference[8] to the DOC's and the Division's interpretation of the sentencing statutes.[9] In support of

---

[8] In order for this court to apply great weight deference to an agency's interpretation of a statute, four requirements must be met: (1) the agency was charged by the legislature with the duty of administering the statute; (2) the interpretation of the agency is one of long-standing; (3) the agency employed its expertise or specialized knowledge in forming the interpretation; and (4) the agency's interpretation will provide uniformity in the application of the statute. *DaimlerChrysler v. LIRC*, 2007 WI 15, ¶ 16, 299 Wis. 2d 1, 727 N.W.2d 311.

[9] The Division is not part of the DOC; rather, it is part of the Department of Administration. *George v. Schwarz*, 2001 WI App 72, ¶ 21, 242 Wis. 2d 450, 626 N.W.2d 57. Wisconsin Stat. § 301.03(3) explains the role of the DOC and the Division in the

his argument, Schwarz asserts that, at the time of Thomas' revocation hearing in 2004, the DOC had had nearly two decades of experience in computing sentences subject to parole release, nearly six years of experience with extended supervision, and one year of experience dealing with consecutive pre-TIS and TIS sentences. Schwarz argues that this court should apply *Jicha v. DILHR,* 169 Wis. 2d 284, 485 N.W.2d 256 (1992), in which great weight deference was given to the Department of Industry, Labor and Human Relations' interpretation of a relatively new statute, because it had experience in administering similar statutes.

¶ 27. Thomas argues that this case is subject to de novo review because there is no long-standing interpretation of the TIS statutes and because there is no evidence that the Division used expertise or specialized knowledge to analyze or interpret the TIS statutes. Thomas further argues that Schwarz's reliance on *Jicha* is misplaced, because that case compared two analogous, simultaneously existing statutory sections. Thomas asserts that, in this case, Schwarz is relying on well-settled interpretations of the pre-TIS sentencing scheme, and arguing that they apply to the new, overhauled sentencing scheme under TIS.

¶ 28. Under the circumstances of this case, we agree with Thomas that reliance on *Jicha* is misplaced. This case focuses on the interpretation of statutes

administration of parole and extended supervision. Wisconsin Stat. § 301.03(3) states, in relevant part, that the DOC shall:

Administer parole, extended supervision and probation matters, except that the decision to grant or deny parole to inmates shall be made by the parole commission and the decision to revoke probation, extended supervision or parole in cases in which there is no waiver of the right to a hearing shall be made by the division of hearings and appeals in the department of administration.

enacted in 2001 pursuant to 2001 Wisconsin Act 109, as part of TIS legislation. Thomas' forgery crimes were committed prior to December 31, 1999, the date that TIS legislation went into effect. The sentence imposed was, therefore, an indeterminate sentence. Thomas' burglary crime was committed after December 31, 1999, and he received a determinate sentence for that conviction.

█

¶ 29.   Neither party cited any controlling authority addressing the particular issue of whether the Division lacked jurisdiction simultaneously to revoke parole and extended supervision of a person serving consecutive indeterminate and determinate sentences. Under the circumstances presented here, we are satisfied that this case presents an issue of first impression for which no deference is owed to the Division or to the DOC.[10] *Solie v. Employee Trust Funds Bd.*, 2005 WI 42, ¶ 25, 279 Wis. 2d 615, 695 N.W.2d 463.

### III

¶ 30.   Schwarz argues that the court of appeals' decision should be reversed, because it relied on statutory silence and ignored unambiguous statutory language that allows the Division to revoke Thomas' parole and extended supervision simultaneously. Schwarz asserts that Wis. Stat. § 302.113(2)[11] unambiguously pro-

---

[10] The entity we must focus on, in regard to the issue of deference, is the Division since it is the decisionmaker on the question of revocation, *see* Wis. Stat. § 301.03(3), but we recognize that Schwarz has argued for deference to the DOC, as well as the Division.

[11] Wisconsin Stat. § 302.113(2) provides in relevant part, "[A]n inmate subject to this section is entitled to release to

vides that extended supervision begins when a person has completed his or her period of confinement.

¶ 31. Schwarz also asserts that Wis. Stat. § 302.11(1)[12] implies that parole begins upon a person's mandatory release from confinement. Reading Wis. Stat. §§ 302.113(2) and 302.11(1) together, Schwarz argues that, upon release from confinement for consecutive pre-TIS and TIS sentences, the person begins both his parole and extended supervision at the same time. He argues that the indeterminate and determinate sentences merge into a single continuous sentence, with the person serving all periods of confinement under all sentences, followed by all periods of nonconfinement. Schwarz asserts that, because the language of §§ 302.113(2) and 302.11(1) mandates releasing a person to both parole and extended supervision upon completion of serving his or her term of confinement, the Division had jurisdiction to revoke Thomas' parole and extended supervision simultaneously.

¶ 32. Schwarz further argues that the legislature's amendment of Wis. Stat. §§ 302.11(3) and 302.113(4) (1999–2000), pursuant to 2001 Wis. Act 109, §§ 386 and 393, respectively, did not effectuate any structural changes in the treatment of consecutive sentences, between the pre-TIS sentencing regime and the TIS sentencing regime. Schwarz notes that § 302.113(4) (1999–2000) was created in 1998 as part of

---

extended supervision after he or she has served the term of confinement in prison portion of the sentence imposed under s. 973.01, as modified by the sentencing court under ... s. 302.045(3m)(b)1., ... if applicable."

[12] Wisconsin Stat. § 302.11(1) provides in relevant part, "[E]ach inmate is entitled to mandatory release on parole by the department. The mandatory release date is established at two-thirds of the sentence."

the first phase of TIS legislation. *See* 1997 Wis. Act 283, § 207. At that time, § 302.113(4) (1997–98) provided in relevant part, " 'All consecutive sentences shall be computed as one continuous sentence.' " Schwarz notes that § 302.11(3) (1997–98) contained the same language. He argues that the amendments made to §§ 302.11(3) and 302.113(4) (1999–2000)in 2002 arose because the legislature enacted TIS in two phases and wanted to make a technical clarification that the language regarding computation of consecutive sentences applied to all consecutive TIS sentences, regardless of whether they were imposed during TIS-I or TIS-II.

¶ 33. Schwarz also argues that Wis. Stat. § 973.15(2m)(c)(2) supports his argument that pre-TIS and TIS consecutive sentences should be computed the same way in the pre-TIS regime and the TIS regime. He argues that, under both pre-TIS and TIS standards, persons serve all confinement time before beginning any period of nonconfinement time. Section 973.15(2m)(c)(2) states, "If a court provides that a determinate sentence is to run consecutive to an indeterminate sentence, the person sentenced shall serve the period of confinement in prison under the determinate sentence consecutive to the period of confinement in prison under the indeterminate sentence." Under this section, Schwarz states, consecutive indeterminate and determinate sentences are merged into one continuous sentence, with all confinement periods served before the person begins any continuous nonconfinement periods of parole and extended supervision.

¶ 34. Thomas argues that the court of appeals properly concluded that Thomas was not yet placed on extended supervision at the time of his parole violations, and that the Division, therefore, had no jurisdiction to revoke his extended supervision. Thomas reads

the sentencing statutes so that confinement periods under indeterminate and determinate sentences are to be served consecutively and continuously under Wis. Stat. § 973.15(2m)(c)2., followed by release to parole supervision which, when completed, is to be followed by extended supervision.

¶ 35. Thomas claims that the amendments to Wis. Stat. §§ 302.11(3) and 302.113(4), which were signed into law in July 2002, were added to conform to recommendations of the CPSC. He points out that the CPSC suggested that extended supervision run first and be followed by parole, in cases where an indeterminate sentence is followed by a determinate sentence.

¶ 36. Thomas argues that Wis. Stat. § 302.113(2) does not mandate initiation of extended supervision once the confinement is complete. Rather, he claims that the plain language of § 302.113(2) merely makes a person eligible for extended supervision. According to Thomas, § 302.113(2) does not say that the person's term of extended supervision begins as soon as the person finishes serving confinement.

¶ 37. Thomas argues that the legislative history of the sentencing statutes suggests that the legislature intended a person to serve consecutive parole and extended supervision as two distinct periods, one following the other. Thomas notes that the original proposed language of Wis. Stat. § 973.15(2)(c)2. included a provision that "the parole portion of the indeterminate sentence [shall be served] consecutive[ly] to the term of extended supervision under the determinate sentence." 2001 Wis. Act 109, § 1142. Thomas takes the position that Governor McCallum's veto of this language shows that there was never any intent for parole and extended supervision to be treated as one continuous period of supervision.

¶ 38. We are satisfied that the Division acted within its jurisdiction when it revoked Thomas' parole and extended supervision simultaneously. As Judge Ralph Adam Fine stated in his dissent to the court of appeals' majority opinion in this case, simultaneous revocation of parole and extended supervision is permitted by the sentencing statutes.

¶ 39. It seems clear that the sentencing statutes do not answer directly the issue presented as to whether a person who is serving consecutive determinate and indeterminate sentences may have his or her parole and extended supervision revoked simultaneously. When interpreting a statute, we begin with the language of the statute. If the meaning of the statute is plain, we need not inquire further. *State ex rel. Kalal v. Circuit Court,* 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110.

¶ 40. Legislative history and case law do, however, often provide some guidance in interpreting the statutes. While, traditionally, we do not resort to legislative history in the absence of a finding of ambiguity, this court has recognized that on occasion we consult legislative history in order to show how that history supports our interpretation of a statute. *Megal Dev. Corp.,* 286 Wis. 2d 105, ¶ 22. Here, as noted previously, the statutes do not squarely answer the issue presented, but require a careful analysis of the overall statutory scheme.

¶ 41. All persons sentenced under the TIS regime are subject to a bifurcated sentence under Wis. Stat. § 973.01. Under Wis. Stat. § 302.11(1), a person is subject to § 302.11 if he or she, like Thomas, is serving a bifurcated sentence under § 973.01. Pursuant to Wis. Stat. § 302.113(2), "an inmate subject to this section is entitled to release to extended supervision after he or she

has served the term of confinement in prison portion of the sentence imposed under s. 973.01, as modified by the sentencing court under . . . s. 302.045(3m)(b)1 . . . if applicable."

¶ 42.    When Thomas was placed on parole in the pre-TIS case (the forgery case), he already had completed serving his term of confinement in the TIS case (the burglary case). Afterward, Thomas was "release[d] to extended supervision," as provided in Wis. Stat. § 302.113(2). Wisconsin Stat. § 302.113(8m)(a) provides in relevant part, "Every person released to extended supervision under this section remains in the legal custody of the department." When Thomas was released to extended supervision, clearly he was in the custody of the DOC. His extended supervision could, therefore, be revoked at any time under Wis. Stat. § 302.113(9)(am), if he were to violate a condition imposed. Section 302.113(9)(am) provides in relevant part, "If a person released to extended supervision under this section violates a condition of extended supervision, the reviewing authority may revoke the extended supervision of the person."

¶ 43.    Thomas was taken into custody on February 2, 2004, for alleged violations of the terms of parole and extended supervision. The alleged violations included possession and sale of heroin, consumption of heroin, possession and consumption of methadone, operating a motor vehicle without prior approval from his parole agent and without a valid driver's license, and failing to report to his parole agent for an office visit. A revocation hearing was held on March 16, 2004, and the ALJ concluded that Thomas had committed all of the alleged violations. The ALJ ordered revocation of Thomas' parole and extended supervision pursuant to her authority under Wis. Stat. § 302.113(9)(am), and the Division upheld the ALJ's decision.

¶ 44. We disagree with Thomas' argument that he was required to complete serving his parole in the 1999 forgery case, before he could begin serving his extended supervision in the 2000 burglary case. Rather, we are satisfied that, under the overall statutory scheme adopted by the legislature, parole and extended supervision are to be served as one continuous period of supervision.

¶ 45. In *Ashford,* 177 Wis. 2d at 38, the court of appeals held that a person serving consecutive sentences was subject to parole revocation for both sentences if he committed a parole violation prior to discharge of the first sentence. Examining Wis. Stat. § 302.11 (1991–92), the court concluded that "the statutory language unambiguously requires revocation on all sentences if a parole violation is committed." The court in *Ashford* rejected the defendant's argument that parole should be viewed as two distinct time periods, with parole on one sentence expiring before parole could begin on the other sentence. *Id.* at 41–42.

¶ 46. Thomas points out that the legislature eliminated the language in Wis. Stat. § 302.11(3) (1999–2000) that stated "All consecutive sentences shall be computed as one continuous sentence" and replaced it with "All consecutive sentences imposed for crimes committed before December 31, 1999, shall be computed as one continuous sentence." Wis. Stat. § 302.11(3) (2001–02). We recognize his argument that this change indicates the legislature's intent to treat all consecutive pre-TIS sentences as one continuous sentence, but not to treat consecutive determinate and indeterminate sentences as one continuous sentence. We disagree, however.

¶ 47. Both the 1999–2000 version and the current version of Wis. Stat. § 302.11(3) use the phrase "one

continuous sentence." There is no language in the statute requiring that a person serve the nonconfinement time on one sentence, before serving the nonconfinement time on another sentence. Although § 302.11(3) does not specify how consecutive determinate and indeterminate sentences are to be treated, it is reasonable to conclude, following the reasoning of the court of appeals in *Ashford,* that parole and extended supervision should not be viewed as two distinct time periods, with parole expiring before extended supervision can begin. *See Ashford,* 177 Wis. 2d at 41–42. In *Ashford,* the court of appeals stated:

> If consecutive sentences are computed as one continuous sentence, the remainder of the sentence referred to in sec. 302.11(7)(a) [(1991–92)] must be the remainder of the aggregate sentence. The unambiguous language of sec. 302.11[(1991–92)] gives the state the authority to revoke Ashford's parole on both the theft and the robbery convictions and to reincarcerate him for the time remaining on both convictions.

*Id.* at 42. Although the *Ashford* court considered pre-TIS sentencing statutes, its reasoning remains sound. We hold that extended supervision and parole are to be treated as one continuous period, and both may be revoked upon violation of the conditions imposed.

¶ 48.   As we discussed previously, Governor McCallum vetoed language in 2001 Wis. Act 109, § 1142 and issued a veto message that stated, "I am partially vetoing these provisions because they needlessly complicate existing procedures. . . . "[13] The veto message reflects an

---

[13] Legislative Reference Bureau, Wisconsin Briefs 02–2 (Supplement): *Executive Vetoes of Bills Passed by the 2001 Wisconsin Legislature from May 3, 2002, through August 16, 2002,* August 2002 at 54.

intention not to change the practice of how consecutive sentences were then being handled. This court's holding in *Ashford,* 177 Wis. 2d at 38, indicates that, prior to TIS, a person serving consecutive sentences was subject to parole revocation for both sentences if he committed a parole violation.

¶ 49.   If we were to adopt Thomas' interpretation of the sentencing statutes, the significance of revocation as a deterrence mechanism would be diminished. As the State of Wisconsin points out in its brief, if we were to treat parole and extended supervision as discrete units that could not be revoked simultaneously, absurd results might follow. If a person were to commit a serious violation of his or her terms of parole or extended supervision, the subsequent revocation of only one unit of extended supervision or parole could be disproportionately small in comparison to the seriousness of the violation.

¶ 50.   We hold, therefore, based on our analysis of the statutory scheme adopted by the legislature and consistent with the *Ashford* decision, that the Division had jurisdiction to revoke Thomas' parole and extended supervision simultaneously. We are satisfied that there is nothing in the statutes at issue that requires a contrary conclusion.

## IV

¶ 51.   Schwarz asks this court in his petition for review to answer the question of whether the court of appeals erred in interpreting Wisconsin sentencing statutes when it held that the Division lacks jurisdiction simultaneously to revoke parole and extended supervision of a person serving consecutive indeterminate and determinate sentences. Schwarz also asks this

court to determine whether the court of appeals applied the correct standard of deference to the interpretation and application of the Truth-in-Sentencing statutes by the Division.

¶ 52. We hold that the Division acted properly, and within its jurisdiction, in revoking Thomas' parole and extended supervision simultaneously, since here the consecutive indeterminate and determinate sentences were properly treated as one continuous sentence with the confinement periods served first, followed by continuous nonconfinement periods of parole and extended supervision.

¶ 53. We further hold that the issue presented in this case is one of first impression, so that no deference is required. The decision of the court of appeals is, therefore, reversed, and the decision of the Division is reinstated.

*By the Court.*—The decision of the court of appeals is reversed.

¶ 54. ANN WALSH BRADLEY, J. (*dissenting*). This case highlights a gap in our sentencing structure. The legislature provided that consecutive sentences of parole should be treated as one continuous period for pre-TIS cases. Wis. Stat. § 302.11(3). It likewise provided that consecutive sentences of extended supervision should be treated as one continuous period in TIS cases. Wis. Stat. § 302.113(4). However, a gap in the statutory scheme, created by a Governor's veto, leaves the statutes silent in regards to the hybrid situation presented in this case: how pre-TIS parole and TIS extended supervision are to be treated when the sentences are consecutive.

¶ 55. At first blush, the majority's approach appears acceptable. After all, what the parties need is to fill the gap. They need an answer and the majority has provided just that.

¶ 56. I cannot join the majority, however, because the statute is silent and the answer that the majority provides (1) is clearly contrary to legislative history; (2) may result in illegal sentences in excess of the statutory maximum; and (3) exposes defendants to serving longer periods behind bars upon revocation, contrary to a basic rule of construction for penal statutes.

I

¶ 57. The majority recognizes that the statutes are silent as to whether consecutive sentences of pre-TIS parole and TIS extended supervision are to be served as one continuous period. Majority op., ¶ 39. It also recognizes that the language of Wis. Stat. § 302.11(3) changed from the general requirement that "[a]ll consecutive sentences shall be computed as one continuous sentence" to the narrower requirement that "[a]ll consecutive sentences imposed for crimes committed before December 31, 1999, shall be computed as one continuous sentence." Majority op., ¶ 46. It reasons that the use of the phrase "one continuous sentence" in both versions of the statute, together with the statutory silence, makes it reasonable to conclude that the legislature intended that consecutive sentences of parole and extended supervision should be viewed as one continuous period. Majority op., ¶ 47. Further, it reasons that Governor McCallum's veto message indicates an intent that supports the majority's conclusion. Majority op., ¶ 48.

II

¶ 58. The majority's view ignores the clear legislative history indicating that parole and extended supervision were intended to be treated as distinct periods. As passed by the legislature, 2001 Wis. Act 109 ("Act") did not leave a gap in the statutory scheme. Rather, it provided that § 973.15(2m)(c)2. would read:

2. If a court provides that a determinate sentence is to run consecutive to an indeterminate sentence, the person sentenced shall serve the period of confinement in prison under the determinate sentence consecutive to the period of confinement in prison under the indeterminate sentence *and the parole portion of the indeterminate sentence consecutive to the term of extended supervision under the determinate sentence.*

2001 Wis. Act 109, § 1142 (emphasis added).

¶ 59. Further, it provided that § 973.15(2m)(d)2. would read:

2. If a court provides that an indeterminate sentence is to run consecutive to a determinate sentence, the person sentenced shall serve the period of confinement in prison under the indeterminate sentence consecutive to the period of confinement in prison under the determinate sentence *and the parole portion of the indeterminate sentence consecutive to the term of extended supervision under the determinate sentence.*

*Id.* (emphasis added). The underlined language, which ultimately was not included in § 973.15(2m), indicates that the legislature intended that in hybrid cases parole would be served consecutive to extended supervision, regardless of which sentence was handed down first.

¶ 60. The language of 2001 Wis. Act 109, § 1142 reflects the recommendations of the Criminal Penalties Study Committee (CPSC), which addressed the treat-

407

ment of consecutive determinate and indeterminate sentences. In its final report, the CPSC recommended that regardless of the order in which sentences are handed down, all confinement time should be served together, and extended supervision should always precede parole. It based this recommendation on the ground that extended supervision was intended to be stricter than parole. The report provides:

> The committee recommends that in either sequence (indeterminate sentence followed by determinate sentence, or determinate followed by indeterminate), and regardless of whether the sentences are run concurrent with or consecutive to each other, all confinement time should be served together, either concurrently or consecutively in whatever sequence ordered by the courts; and extended supervision should always precede any parole time. This recommendation is based in the Committee's conclusion that [extended] supervision will involve stricter community supervision than currently available through parole.

Criminal Penalties Study Comm., Final Report on 1997 Wis. Act 283, Truth In Sentencing, at 102 (Aug. 31, 1999).

¶ 61. The CPSC clearly viewed parole and extended supervision as having important differences, and that it made a difference which was to be served first. By following the CPSC's recommendation that parole follow extended supervision in hybrid cases, the legislature agreed that parole and extended supervision had important differences.

¶ 62. Despite the CPSC's recommendation and the legislation reflecting that recommendation, Governor McCallum vetoed the language in the Act providing that parole should follow extended supervision in consecutive determinate and indeterminate sentences. In

his veto message, he notes that the consecutive periods of parole and extended supervision are to be served in the order that the sentences are imposed.

> I am partially vetoing these provisions because they needlessly complicate existing procedures and place an administrative burden on the Department of Corrections that could lead to increased errors in sentence calculation and offender litigation. Consecutive sentences are currently served in the order they are handed down from the court, which means parole is generally served before extended supervision. These provisions require that when sentences are to be served consecutively, sentences with extended supervision are served first. If an offender has a sentence with a parole provision and receives a consecutive sentence with an extended supervision provision, the extended supervision must be served first, requiring the shifting of the dates for serving the first sentence. The dates for serving all other sentences will need to be adjusted, resulting in an increased potential for errors and litigation if an offender is held longer than the sentence that was imposed.

Legislative Reference Bureau, Wisconsin Briefs 02–2 (Supplement): *Executive Vetoes of Bills Passed by the 2001 Wisconsin Legislature from May 3, 2002, through August 16, 2002,* August 2002, at 54.

¶ 63. Nothing in Governor McCallum's veto message can be construed as intending that consecutive sentences of parole and extended supervision are to be served as a single continuous period. Rather, the intention is clear that consecutive sentences of parole and extended supervision should be served, one after the other, in the order that they are handed down. As the court of appeals notes, the Governor's veto message contemplates that the periods are distinct, such that "parole is generally served before extended supervision."

¶ 64.  Nevertheless, the majority ignores the clear legislative history and determines that this gap, this utter silence, somehow makes it reasonable to view consecutive sentences of parole and extended supervision as one continuous period. Majority op., ¶ 47.

¶ 65.  I disagree with the majority's view that the Governor's veto message regarding the order in which consecutive periods of parole and extended supervision are served demonstrates "an intention not to change the practice of how consecutive sentences were then being handled." Majority op., ¶ 48. It is correct that the message demonstrates an intention not to change the practice regarding the *order* in which consecutive sentences are served. However, the Governor's statement that parole is generally served before (rather than continuous with) extended supervision illustrates that he understood that the periods are distinct.

¶ 66.  In sum, the statutes are silent on whether to treat parole and extended supervision as distinct or continuous. The CPSC viewed consecutive sentences of parole and extended supervision as distinct and the legislature passed a bill that reflected the CPSC's view that the periods were distinct. Additionally, the Governor's veto message supports the view that the periods are distinct. Such a record cannot support the majority's interpretation that there was any intention that parole and extended supervision were to be treated as one continuous period in cases such as this.[1]

---

[1] The majority also relies on the continued vitality of *Ashford v. Division of Hearings and Appeals,* 177 Wis. 2d 34, 501 N.W.2d 824 (Ct. App. 1993), for its determination. Majority op., ¶ 47. I do not dispute the holding of *Ashford.* Rather, *Ashford* concerned the treatment of consecutive periods of parole that, according to the statute, were to be treated as one continuous sentence. *Id.* at 39–40. Here, the statute is silent as

¶ 67.   It is not simply the legislative history that leads me to diverge from the majority's view. I am particularly concerned that the majority's interpretation may expose defendants to illegal sentences. If a court imposes a sentence in excess of the maximum authorized by law, it is an illegal sentence. Wis. Stat. § 973.13. Although this case does not represent an illegal sentence, the majority's analysis allows for illegal sentences in other cases. Let me explain.

¶ 68.   Suppose a defendant has a pre-TIS sentence and a TIS sentence to be served consecutively (as here). Further suppose that on his pre-TIS case, the defendant was sentenced to three years incarceration and five years parole. In his TIS case, he is convicted of burglary and is sentenced to a determinate sentence of seven years confinement and five years extended supervision. Burglary is a Class F felony with a maximum imprisonment (confinement plus extended supervision) of 12.5 years.

¶ 69.   The law of course provides that periods of incarceration and confinement, even though they may be imposed as consecutive sentences, are to be served as one continuous period. Wis. Stat. §§ 973.15(2m)(c)2. and (d)2. All agree with this premise. Where we part ways is that the majority interprets the gap in the statutory scheme to allow for pre-TIS parole and TIS supervision, even though imposed consecutively, to be served as one continuous period.

¶ 70.   In the majority's view, when a person is released from the confinement portion of a determinate sentence served consecutively with an indeterminate sentence, he or she is automatically on extended super-

to how to treat periods of parole served consecutively with periods of extended supervision. Thus, *Ashford* is inapplicable.

vision. Majority op., ¶ 42. Thus, a person serving consecutive periods of parole and extended supervision will be on extended supervision from the moment he or she is released from confinement and will finish serving extended supervision at the moment he or she completes both parole and extended supervision.

¶ 71.　In other words, in the above hypothetical, the continuous period of extended supervision could be up to ten years (five years of parole plus five years extended supervision). Allowing for extended supervision for up to ten years, in addition to the period of confinement of seven years, would result in a sentence that is far in excess of the statutory maximum for a Class F Felony (12.5 years). The net result of the majority's analysis is that in many instances treating the period of extended supervision as continuous with the period of parole will result in illegal sentences.

IV

¶ 72.　Even if the majority opinion is contrary to clear legislative history, and may result in illegal sentences, what difference does it make whether parole and extended supervision are two separate periods or combined into one continuous period of supervision? After all, the total length of combined sentences will remain the same.

¶ 73.　What difference does it make that in August 2001, when Thomas was released from prison,[2] he was placed solely on parole to be followed by a consecutive period of extended supervision rather than being placed on both at the same time?

---

[2] Thomas was released after having served in the Challenge Incarceration Program. Neither party contends that his participation in that program or its effect on his sentence bears upon the legal issues presented.

¶ 74. The difference in result lies in the fact that if he was not placed on extended supervision upon release from prison, then his extended supervision could not have been revoked when he was taken into custody on February 2, 2004, due to an alleged parole violation. If parole and extended supervision are two separate consecutive periods, then his extended supervision had not yet commenced.

¶ 75. As a consequence, if he were serving only parole at the time of revocation, then the period of exposure to being placed behind bars is far less than if he were serving one continuous period of parole and extended supervision. At oral argument, the State made the representation that at the time of revocation Thomas had two years, 15 days left to serve on his parole. Thus, the potential exposure for prison time based solely on revocation of parole was two years, 15 days. In contrast, he had eight years remaining on his extended supervision at the time of the February 2, 2004, revocation. If parole and extended supervision are treated as one continuous period, then his potential for prison time upon revocation is increased by an additional eight years.

¶ 76. The interpretation of the majority, which provides for greater potential time served behind bars upon revocation, is not only contrary to the clear legislative history but is also contrary to a basic rule of construction regarding penal statutes. It is fundamental that "[p]enal statutes are generally construed strictly to safeguard a defendant's rights unless doing so would contravene the legislative purpose of a statute." *State v. Baye,* 191 Wis. 2d 334, 340, 528 N.W.2d 81 (Ct. App. 1995). Reading the requirement that consecutive sentences of parole and extended supervision should be

treated as one continuous period into a statutory gap violates this precept.

## V

¶ 77. In sum, because the majority opinion ignores clear legislative history, may often result in sentences in excess of the statutory maximum, and subjects defendants to greater periods of confinement contrary to a basic rule of construction for penal statutes, I cannot join the majority.

¶ 78. Rather, I would determine that Thomas, who was serving consecutive sentences, was serving parole and had not yet been released to extended supervision. He therefore could not have had his extended supervision revoked under Wis. Stat. § 302.113(9)(am). Accordingly, I respectfully dissent.

¶ 79. I am authorized to state that Chief Justice SHIRLEY S. ABRAHAMSON joins this dissent.